[S. F. No. 530.  Department Two.—September 10, 1897.]

# PACIFIC ROLLING MILL COMPANY, Appellant, v. W. D. ENGLISH et al., Respondents.

CONTRACT TO CONSTRUCT SEAWALL—SUBCONTRACT—RESERVED PERCENTAGE—
ORDER UPON HARBOR COMMISSIONERS—CONDITION PRECEDENT—ABANDON-
MENT OF WORK—COMPLETION BY CONTRACTOR—RIGHTS OF ASSIGNEE.—
Where one who had contracted with the state board of harbor com-
missioners to construct part of the sea-wall, made a subcontract,
agreeing that a residue of twenty-five per cent of the subcontract
price was to be paid by an order drawn upon the harbor commis-
sioners, to be held by a third person until the work was completed
and accepted by them, and delivered to the subcontractor only on
the faithful performance of the subcontract, and, if it was not per-
formed as therein specified, the order was to be forfeited and re-
turned to the contractor, who might complete the work at the ex-
pense of the subcontractor, the completion and acceptance of the
work is a condition precedent to the payment of the reserved per-
centage, and upon abandonment of the work by the contracting
company which made the subcontract before its final completion, it
is not entitled to the order, or the money which it represents, and
its assignee is in no better position, and is only entitled to such por-
tion of the reserved percentage as might remain after deducting the
expense incurred by the contractor in completing the work specified
in the subcontract, and an assignee of that portion of the reserved
percentage covered by such expense, acquires nothing by the assign-
ment.

ID.—CONSENT OF CONTRACTOR TO ASSIGNMENT OF RESERVED PERCENTAGE—
CONDITIONS—SUBCONTRACT NOT MODIFIED.—The written consent of the
contractor to the assignment by the subcontractor of the reserved
percentage, which is given expressly subject to the terms and con-
ditions of the subcontract, and to the completion of the contract ac-
cording to the terms and conditions thereof, works no modification
of the subcontract, and does not circumscribe the rights of the con-
tractor, in case of a violation of the terms of the subcontract by the
assignor; and the assignee takes the assignment *cum onere.*

ID.—LOSSES OF CONTRACTOR IN COMPLETING SUBCONTRACT—CONFLICTING EVI-
DENCE—APPEAL.—Where the evidence is conflicting as to what losses were
sustained by the contractor in completing the work specified in the
subcontract upon abandonment thereof by the subcontractor, a new
trial cannot be granted for failure of the evidence to support the
findings as to the losses so sustained.

ID.—AMOUNT OF LOSS—VALUE OF LABOR—EXPERT EVIDENCE—STRIKING OUT
EVIDENCE FOR APPELLANT—HARMLESS RULING.—In an action by an as-
signee of the reserved percentage, where expert evidence was given
for the defendant to show the value of certain labor charged for by
the contractor in performing work which the subcontractor had cov-
enanted but failed to perform, and experts testified for plaintiff in

rebuttal that the labor was of considerably less value, the striking out such rebutting evidence is harmless, where it appears that if the lowest value testified to were accepted, the amount of loss of the contractor would still be largely in excess of all that portion of the reserved percentage assigned to plaintiff.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco and from an order denying a new trial. J. C. B. Hebbard, Judge.

The facts are stated in the opinion.

T. Z. Blakeman, for Appellant.

William H. Jordan, for Respondents.

SEARLS, C.—This action was brought by the plaintiff, a corporation, to have the defendants, the state board of harbor commissioners, adjudged and directed to draw their draft on the harbor fund, in favor of the plaintiff, for the sum of $4,607.12, and to ascertain and determine to which of the other defendants the balance of a fund of $28,084.12 belongs, and to have drafts in their favor therefor; to have the Kennedy & Shaw Lumber Company, a corporation, a defendant herein, restrained and enjoined from prosecuting a writ of mandate against said state board of harbor commissioners for the recovery of said sum of money, etc., and to restrain the said harbor commissioners from drawing drafts for any portion of said sum until the further order of the court.

The other defendants are the San Francisco Contracting Company, a corporation, L. B. Doe, J. S. Antonelli, J. W. Taylor, W. S. Somervell, and C. D. Vincent.

The cause was tried by the court without the intervention of a jury, and upon the findings of the court judgment was entered, whereby it was adjudged that neither plaintiff nor the defendants, J. W. Taylor and W. S. Somervell, take anything by the action; that the sum or fund in question of $28,084.12 be divided as follows: $308 and interest, etc., to defendant C. D. Vincent, and the residue thereof to the defendant, the Kennedy & Shaw Lumber Company, with costs, etc.

Plaintiff appeals from the judgment and from an order denying its motion for a new trial.

As the judgment was entered between two and three years prior to the attempted appeal therefrom, we need not notice it further, and may confine our inquiry to the order denying a new trial.

The facts essential to an understanding of the case are, that on the twenty-fifth day of October, 1888, the board of state harbor commissioners, consisting at that time of W. D. English, A. C. Paulsell, and Charles O. Alexander, entered into a contract with defendant J. S. Antonelli for the construction by the said Antonelli of section 8b, of the seawall along the waterfront and wharves of the harbor of San Francisco, said seawall to be constructed according to and in conformity with certain plans and specifications submitted and executed by the parties.

By the terms of the contract Antonelli was to furnish the labor and materials, and to be paid as follows, to wit, seventy-five (75) per cent monthly upon estimates thereof to be made by the chief engineer of said board, and the balance of twenty-five (25) per cent to be retained by said board until the completion of the work according to the plans and specifications; and until the acceptance of the work and its maintenance for three months thereafter.

On the first day of November, 1888, defendant Antonelli entered into an agreement or subcontract with the defendant, San Francisco Contracting Company, a corporation, whereby the said contracting company agreed with Antonelli to perform certain portions of the work and to furnish certain portions of the materials provided for in the original contract, to wit, to furnish the piles, lumber, and other materials necessary to drive and cap the same; put the platform on top thereof ready to receive concrete and sand in accordance with the plans and specifications of the lief engineer, etc. All of said work to be done and completed in accordance with said plans and specifications, and said contracting company to furnish everything necessary therefor to complete said work of piling and planking. Antonelli agreed to pay the contracting company $53,000 for said work and materials when so furnished and done in accordance with the contract. The contracting company was also to furnish and fill in, on top of the planking and below, all the sand and rock called for by the specifications for 30 cents per cubic yard; to furnish and place the rock for the stone foot wall outside the concrete for 80

cents per ton; and to protect the north end of the embankment, as set forth in the plans and specifications, by a bulkhead, free of charge.

The contracting company also agreed to furnish and deliver the rock required for concrete ready for use for $1.25 per cubic yard, and, in case a floating caisson should be used instead of a cofferdam in the construction of the seawall, the contracting company was to furnish the iron and lumber for the bottom of said caisson, and the labor necessary in building thereof (except the calking), and to fasten the caisson in place when sunk by Antonelli. Antonelli was to pay the contracting company as follows:

Seventy-five (75) per cent monthly on the estimates of the chief engineer of the board of harbor commissioners, "the balance of twenty-five (25) per cent said Antonelli agreed to pay by an order drawn upon said board of state harbor commissioners in favor of John F. Kennedy, to be by him held until the completion of said contract and the acceptance of said work by the said board of state harbor commissioners, but only on the faithful perform-ance of said contract by the said San Francisco Contracting Company."

The plans and specifications prepared by the harbor commis-sion were made a part of the contract, and if the contracting com-pany failed to perform the contract as therein specified, and if Antonelli had to complete the work, the orders so to be delivered to Kennedy were to be forfeited and returned to said Antonelli; and, if the company failed to perform, Antonelli might proceed with the work at the expense of the contracting company.

All the conditions of the original contract of Antonelli with the state board of harbor commissioners were to be considered a part of the contract.

The contracting company entered upon the work and pursued it until in January, 1890, when it abandoned it and thereafter failed and refused to complete the same. It had received pay to the extent of seventy-five per cent of the estimates, and the twen-ty-five per cent of the value of the work done at the time of the abandonment of the contract, which was kept and retained by the harbor commissioners under the contract as security, etc., amounted to the sum of $11,887.73 (which, with the exception of

$4,170.12, had been assigned to the Kennedy & Shaw Lumber Company). Antonelli assigned to Antonelli & Doe, who completed the contracting company's contract at a loss of $4,834.80, over and above what they received or were entitled to receive on the original contract.

On December 23, 1889, the contracting company assigned to plaintiff herein its interest present and future in the twenty-five per cent due or to become due it under said contract with Antonelli, except such portions thereof as it had previously assigned to the Kennedy & Shaw Lumber Company.

The amount then unpaid on account of said twenty-five per cent was $4,170.12, and thereafter a further sum of about $500 was retained by the harbor commission as twenty-five per cent of the value of work subsequently done by the contracting company, under its said contract with Antonelli. Antonelli consented in writing to the assignment by the contracting company to plaintiff.

The board of state harbor commissioners had notice of the contract between Antonelli and the contracting company, and that the latter was performing labor, etc., thereunder, but never consented thereto, and looked solely to Antonelli to perform his contract with said board. The work under the contract and subcontract was all done, and said section 8b was accepted by the harbor commissioners September 4, 1890, and had been maintained for a period of three months prior to the commencement of this action, and the entire twenty-five per cent due under the original contract amounting to $28,084.12 was due, but the court finds there was nothing due to plaintiff under the assignment to it by the contracting company; that the San Francisco Contract Company did not earn the sum of $4,670.12, or any other sum which was not paid to it, and did not complete its contract.

Antonelli and the firm of Antonelli & Doe assigned to the "Kennedy & Shaw Lumber Company" the said sum of $28,084.12 in consideration of an indebtedness to it by them of a sum in excess thereof.

The Kennedy & Shaw Lumber Company had no notice of the assignment to plaintiff and never consented thereto. The foregoing facts seem to contain sufficient of the findings to elucidate

the case so far as appellant is concerned, and we omit the residue, subject to reference to them should it appear necessary in the consideration of the case.

The vital question in the case relates to the rights of the parties, Antonelli and the San Francisco Contracting Company, to the twenty-five per cent reserved under their contract until the work was completed.

The contract and findings both show that an order upon the board of state harbor commissioners was to be drawn in favor of John F. Kennedy and delivered to him, to be held until the contract was completed and the work accepted by the board of state harbor commissioners, and in case of the failure of party of the second part to complete the contract, and in case Antonelli had to complete it, the order was to be forfeited and returned to Antonelli, who might proceed with the work at the expense of the party of the second part, the San Francisco Contracting Company. The party of the second part did abandon and fail to complete the contract. The order was to be delivered upon the completion of the contract. Completed by whom? Manifestly by the contracting company, for if it did not complete it the order was to be delivered up to Antonelli.

The completion and acceptance of the work was a condition precedent to the payment of the twenty-five per cent, or, what is the same thing, the delivery of the order on the harbor commissioners.

As the contracting company was not entitled to the order or the money which it represented, its assignee, the plaintiff herein, is in no better position. Neither were entitled to the order, or the fund against which it was drawn, until the contract was completed, and under that clause of the contract which authorized Antonelli, in case of failure by the contracting company so to do, to complete the contract at its expense, the contracting company or its assignee was only entitled to such residue of the contract price as remained after deducting the expense incurred by Antonelli or his assignee in its completion. This was the theory upon which the court below proceeded.

Of the $11,887.73 constituting the reserved percentage at the time the subcontract was abandoned, $7,474.73 was assigned by the contract company to the Kennedy & Shaw Lumber Com-

pany by orders drawn upon Antonelli and Doe, assignees of Antonelli, and accepted as follows:

"Accepted and payable at completion of and acceptance of contract of S. F. C. Co."

(Signed)  "ANTONELLI & DOE."

The residue of this reserved percentage and $4,834.80 in addition thereto was expended by Antonelli & Doe in completing the work on the subcontract.

Again, it is claimed by appellant that Antonelli, by consenting to the assignment of the residue of the net reserve to plaintiff herein, waived and lost any right which he might otherwise have had thereto. The assignment was dated December 23, 1889; described the contract in succinct terms and by reference thereto, etc. Antonelli by his attorney in fact assented thereto in the following language:

"San Francisco, Dec. 23, 1889.

"I hereby consent to the foregoing assignment of the net reserve percentage so called, retained by me under and by virtue of said contract referred to and subject to the terms and conditions of said contract, and on completion of said contract according to terms and conditions thereof. I hereby agree to give to the holder of the foregoing assignment such order or orders on the board of state harbor commissioners as will enable said holder to draw from said board the amount of said net reserve percentage.  J. S. ANTONELLI.

"By L. B. Doe, Attorney in Fact."

This was a consent to the assignment, but it was "subject to the terms and conditions of said contract," and it was only "on completion of said contract according to terms and conditions thereof" that Antonelli agreed to give an order or orders on the board of state harbor commissioners for the amount of the net reserve percentage. In other words, he agreed to do just what under the contract he was bound to do, and nothing more. Such an agreement worked no modification of the contract, and did not circumscribe the rights of Antonelli in case of a violation of the terms of the contract by the assignor. Appellants took the assignment *cum onere.*

2. But appellant urges that the findings of the court as to the losses sustained by Antonelli and his assignees in completing the contract are not supported by the evidence. We have given this branch of the case careful attention, but, after a review of the evidence, we are unable to say that under the well-established rules laid down by this court for its guidance in passing upon contradictory evidence a new trial should be granted for that cause.

3. Appellant also contends that the court below erred in striking out the testimony of experts produced by appellant.

The testimony of these experts, two in number, related to the charge for labor in putting together the bottoms of seven caissons, which appellant's assignor had covenanted to construct but had failed to do. L. B. Doe, on behalf of the Kennedy & Shaw Company, had testified that the value of such labor was $16 per thousand feet of lumber used in the bottoms. In rebuttal of this charge appellant introduced two experts, one of whom placed the value of such labor at $6 to $8 and the other at $10 per thousand feet of lumber. This testimony was stricken out by the court.

We need not discuss the propriety of this action by the court, for the reason that if error it does not call for reversal.

The testimony showed that these caissons were 14x70 feet, with bottoms twenty inches thick. This would give 19,600 feet of lumber in each of the bottoms. At $16 per thousand feet the value of the labor in each would be $313.60, or $2,195.20 for the whole seven.

At the lowest price fixed by appellant's experts, viz., $6 per thousand feet, the value of the same labor would be $117.60 per bottom, or $823.20 for the whole, a difference of $1,372. Deduct this last sum from $4,834.80, the sum lost by Antonelli & Doe, and found by the court over and above all they received or were entitled to receive, and we still have a loss on their part of $3,462.80, for which they received no compensation. It follows that, conceding it was error to strike out the expert testimony, appellant was not injured thereby.

One of the caissons was smaller by several feet than the others, but as it would not, if all the labor on its bottom were stricken out, alter the result, we have not noticed it more particularly.

We are of opinion the judgment and order appealed from should be affirmed.

In reaching this conclusion we have assumed without deciding that plaintiff could properly bring and maintain this action upon an assignment of a part only of an entire demand.

Haynes, C., and Belcher, C., concurred.

For the reasons given in the foregoing opinion the judgment and order appealed from are affirmed.

McFarland, J., Temple, J., Henshaw, J.