G. E. CHARLTON *v.* CHEVROLET MOTOR COMPANY, *A Corporation*

(No. 7843)

Submitted April 24, 1934. Decided May 8, 1934.

H. E. De Jarnette, for appellant.
*Brown, Jackson & Knight, Kee & Lubliner* and *R. G. Kelly*, for appellee.

MAXWELL, JUDGE:

G. E. Charlton, plaintiff, local dealer at Princeton, West Virginia, for Chevrolet Motor Company, defendant, operated under a written agreement between the parties, dated August 1, 1928. The defendant having

cancelled the agreement in April, 1929, the plaintiff instituted this suit against it for an accounting. The court decided in favor of the plaintiff with respect to one of three items involved and against him on the other two. The plaintiff appealed.

The finding in favor of the plaintiff is under the used car disposal fund for which provision is made in the contract. The amount decreed in favor of the plaintiff is $214.20 with interest from date of the decree. The defendant did not appeal from this finding nor cross-assign error. It is therefore final.

The second item of accounting asserted by the plaintiff arises under the cooperating advertising fund provided for in the contract. The contract provisions on this subject follow:

"The Seller will add Six Dollars ($6.00) to the invoice of each new Chevrolet motor vehicle and chassis purchased by the Dealer, and the money collected from this source will be used to establish the Chevrolet Dealers' Co-operative Advertising Fund. Seller will contribute and pay into said Fund Two Dollars and Fifty Cents ($2.50) for each Six Dollars ($6.00) collected as above provided. The Seller will also collect and credit to the Co-operative Advertising Account of the Direct Dealer the sum of One Dollar ($1.00) for each new Chevrolet motor vehicle and chassis purchased from it by a Class 'A' Associate Dealer operating under said Dealer.

"The money obtained in this manner for Dealers' Co-operative Advertising Fund will be spent by the Seller in the placement of Dealers' local advertising thru the channels of bill board, newspaper advertising and such other methods of advertising (other than road signs) as in the judgment of the seller will be of benefit to its Dealers.

"The Seller will put forth its best efforts to accomplish a proportional distribution of this advertising and will particularly endeavor to expend the full amount paid by Dealers in their respective vicinities. The portion of the

"Fund contributed by the Seller will be used for advertising purposes for the Dealers which, in the judgment of the Seller, will be best calculated to still further add to the Dealers' interests. In carrying out this advertising program, the Seller will as far as practicable arrange to place in the advertisement the local Dealer's name and address. In cities where more than one Dealer is located, the names of all Dealers will be carried if, in the judgment of the Seller, this will be practicable; otherwise a slogan for the interests of all Dealers will be used."

The plaintiff's contribution to this fund was $2,924.00. The defendant claims that of said sum, it expended $2,270.22 for advertising in plaintiff's community. After cancellation of the contract, the defendant repaid to the plaintiff the balance of $653.78. The plaintiff's contention is that the defendant should have contributed to the advertising fund, as required by the contract ($2.50 per car) the sum of $1,337.50, making a total of $4,261.50; that the advertising should have been paid for by defendant out of this gross fund and of the residue there should have been a refund to the plaintiff in proportion to his contributions to the fund. By this process, plaintiff reasons that his refund should have been $1,365.80. This position is based on the legal proposition that a trust fund was created for the benefit of the plaintiff and that all advertising provided for by the above quoted provisions of the contract was to be paid for out of said fund.

The contractual provision under immediate consideration is but one of many involved and intricate provisions of an elaborate and complicated contract devised and prepared by the seller. Under familiar principles of construction, uncertainties in such a contract must be resolved against the party primarily responsible for them. 6 Ruling Case Law, p. 854. The principle is applied in construction of oil and gas leases. *Bettman* v. *Harness*, 42 W. Va. 433, 447, 26 S. E. 271; *Martin* v. *Coal & Oil Corp.*, 101 W. Va. 721, 133 S. E. 626. And in

insurance contracts. *Booher* v. *Fire Association*, 91 W. Va. 468, 113 S. E. 754; *St. Paul Fire and Marine Co.* v. *Bachmann*, 49 Fed. (2d) 158; *Shinn* v. *Ins. Co.*, 104 W. Va. 353, 359, 140 S. E. 61.

The import of this contractual provision is that there was to be created a joint fund to be used primarily for the benefit of the dealer, which benefit would, of course, operate to the advantage of the seller as well. In the contract, this feature is headed in bold type "Chevrolet Dealers' Cooperative Advertising Fund". After stipulating the manner of contributing to said fund by the respective parties, there is a provision that the money thus obtained will be spent by the seller in local advertising. This is not compatible with the idea now advanced by the seller that the portion of the fund contributed by the dealer was to be spent for local advertising and the portion furnished by the seller should be spent in general or national advertising.

The general import of the provisions of this portion of the contract are so devised as readily to induce the belief on the part of a dealer that a trust fund was being provided for advertising purposes. Most of the language employed so indicates. The sentence, "The portion of the Fund contributed by the Seller will be used for advertising purposes for the Dealers which, in the judgment of the Seller, will be best calculated to still further add to the Dealers' interest," in so far as it may be inconsistent with the general tenor of the provision discussed, will be disregarded. At most, it injects uncertainty into the equasion. Under the familiar rule of construction, already mentioned, the uncertainty must be resolved against the seller. In our opinion, the plaintiff's position under this item is well taken.

The third of plaintiff's items asserted as basis of recovery from the defendant involves his claim for damages on account of profit lost by him as an incident of the cancellation of the contract. He avers and testifies that when the company notified him the middle of April, 1929, of its intention to cancel the contract, he had made sales of fourteen cars which he had ordered of the

seller but which the seller declined to furnish to him; that his commission on the sales of these cars would have amounted to $1,125.00. The provision of the contract with reference to cancellation follows:

"This Agreement shall continue in force and govern all relations and transactions between the parties hereto until cancelled or terminated. Either party may cancel or terminate this Agreement at any time, provided the party desiring to so terminate and cancel the same gives unto the other a written notice (by registered mail or other means of delivery) of such intention at least THIRTY DAYS prior to the date of such proposed termination and cancellation.

"Any cancellation or termination of this Agreement shall also operate as a cancellation of all orders for standard motor vehicles, chassis, parts, accessories or service and other equipment which may not have been shipped prior to receipt of notice of such cancellation or termination by Dealer, but will not release Dealer from payment of any sum which may then be owing Seller, or payment for any special motor vehicle, chassis or equipment for same which may have been ordered by Dealer and not shipped by Seller prior to such notice of cancellation or termination. It is understood that any motor vehicle or chassis which may have been ordered by Dealer and which differs in any way from the standard specifications therefor as adopted by Seller or special equipment of any type shall be considered as special."

It will be noted that this provision is not for instant cancellation, but for cancellation at the expiration of thirty days from the giving of notice. This was recognized by the seller in the cancellation notice which it gave the plaintiff. The notice read:

"You are hereby notified that the undersigned has elected and hereby does elect to cancel and terminate the selling agreement be-

tween yourself and the Chevrolet Motor Company, dated August 1st. 1928 and the current appendix thereto, such cancellation and termination to become effective thirty days from the time you receive this notice."

The first sentence of the second paragraph of the above quoted cancellation provisions of the contract relates to cancellation by the dealer. By the provisions of that sentence, all orders placed by the dealer are to be deemed cancelled upon his giving notice of cancellation of the contract, but he is not thereby to be released from any special orders which he had placed.

In support of its contention that upon the giving of notice of cancellation of the contract, the seller had the right to refuse to make further shipments of automobiles to the dealer, the seller invokes another provision of the contract which reads:

"If for any reason Seller does not ship during any month the orders specified for that month, such unshipped orders for that month may be cancelled by Seller and be deducted from the allotment to the Dealer as specified for that month and in such case the Seller and Dealer will be released from any further liability thereon."

It will be noted that under this provision the seller had the right to cancel any unshipped orders for any month if for any reason it had not made such shipments. This necessarily means an affirmative cancellation of orders by the seller. The record does not disclose that such was done in this case. The contract was an operative, live instrument until the expiration of thirty days following notice of cancellation. It was just as much a binding instrument during the thirty-day period as it was before notice of cancellation given. Therefore, if, before notice of cancellation of the contract or within thirty days thereafter, the seller desired to cancel orders which it had received from the dealer, it was incumbent upon it to do so expressly and affirmatively.

And then, too, in justification of such cancellation of orders, there must have been in the background some reason why shipments had not been made by the seller. This means a reason in fact. Fancifulness of reason or arbitrariness of conduct would not suffice.

The observation above made apropos of the advertising fund, with respect to the settled rule of construction which requires that in complicated contracts prepared and employed by one of the parties thereto uncertainties shall be resolved against such party, are equally applicable to the contract's cancellation provisions now being considered. We therefore reach the conclusion that under this element of his case, the plaintiff is entitled to damages by reason of his inabiltiy to deliver cars which he had sold at the time the defendant notified him of cancellation of the contract.

As to equity jurisdiction, challenged by the defendant. Under the cooperative advertising feature of the contract, a trust fund was created. The fund was for the mutual benefit of the parties, one of whom was the custodian. "A trust is defined to be an obligation under which a person, in whom the legal title to property is vested, is bound in equity to deal with the beneficial interest therein in a particular manner, either wholly in favor of others, or partly in favor of others conjointly with himself." Hogg's Equity Principles, p. 737. "The jurisdiction of courts of equity to enforce performance of trusts arises where property has been conferred upon, and accepted by, one person, on the terms of using it for the benefit of another." *Wilson* v. *Kennedy,* 63 W. Va. 1, 59 S. E. 736. "A court of equity is a proper forum in which to exact settlement of a trusteeship." *Currence* v. *Ralphsnyder,* 108 W. Va. 194, 151 S. E. 700. There being this firm ground of equity jurisdiction, the cause will be retained in equity for disposition of all matters involved. "Where, upon one ground, a court of equity has jurisdiction, it will give complete relief, even in matters as to which, considered alone, it would not have jurisdiction." *Cecil* v. *Clark,* 44 W. Va. 659, 30 S. E. 216; *Downes* v. *Lumber Co.,* 99 W. Va. 267, 128 S. E. 385.

For reasons set forth, we are of opinion to reverse the decree of the trial chancellor in so far as it overruled the plaintiff's exceptions to the report of the commissioner in chancery and thereby disallowed recovery to the plaintiff on the basis of his claims under the cooperative advertising and cancellation elements of the contract. We remand the case for further proceedings not at variance with the principles announced in this opinion.

*Reversed and remanded.*