[Civ. No. 21904.   Second Dist., Div. Three.   Feb. 20, 1957.]

LEE ADLER Appellant, v. THOMAS DISTRIBUTING COMPANY (a Corporation) et al., Defendants; E. W. BENNETT et al., Respondents.

Horowitz & Howard and Alvin F. Howard for Appellant.

Bailey & McWhinney and Rufus Bailey for Respondents.

VALLÉE, J.—Appeal by plaintiff from a judgment in his favor against defendant E. W. Bennett in an action for breach of contract.

On March 21, 1950, E. W. Bennett and Emma K. Bennett as lessors entered into a written lease of a parcel of realty with Thomas Distributing Company, a corporation, to be referred to as Thomas, as lessee. This lease is referred to as the Bennett-Thomas lease. The rental was $1,225 a month for 10 years commencing July 1, 1950. The lease provided that the property could not be sublet or the lease assigned by the lessee without the written consent of the lessors. On execution of the lease Thomas paid the Bennetts $14,700 as advance rental.

In May 1952 Thomas negotiated a sublease of the property at an increased rental. As a condition to giving consent to the sublease, the Bennets required Thomas to share the increased rental with them. Accordingly, on May 22, 1952, a supplemental agreement was entered into between the Bennetts and Thomas.[1] The supplemental agreement recited:

---

[1]The supplemental agreement reads:

"SUPPLEMENTAL LEASE AGREEMENT

"Referring to that certain lease dated March 21, 1950, between E. W. BENNETT and EMMA K. BENNETT as Lessor, and THOMAS DISTRIBUTING COMPANY as Lessee, covering the premises described therein and situated at the Northwest corner of South Anderson and Azuza Streets, Los Angeles, California.

"It is understood between the Lessor and the Lessee that due to a change in the Lessee's business operations, the Lessee has no further need for said premises for lessee's own occupancy, and that the Lessee proposes to sublease said premises to other parties for the balance of the

"It is understood between the Lessor and the Lessee that due to a change in the Lessee's business operations, the Lessee has no further need for said premises for lessee's own occupancy, and that the Lessee proposes to sublease said premises to other parties for the balance of the term of said lease, subject always to the provisions of Paragraph 16-H of said lease relating thereto; and it is further understood that the Lessee pursuant thereto now proposes to sublease said prem-

term of said lease, subject always to the provisions of Paragraph 16-H of said lease relating thereto; and it is further understood that the Lessee pursuant thereto now proposes to sublease said premises for a portion of Lessee's unexpired term to O'Keefe & Merritt Co.

"Now therefore, in consideration of the performance of the agreements herein contained by the Lessor and the Lessee, and for certain other valuable considerations, the adequacy and receipt whereof being hereby acknowledged by each of the parties hereto, the Lessor and the Lessee do mutually covenant and agree, as follows:

"(1) The Lessor agrees to execute that certain CONSENT TO SUBLEASE, dated May 22, 1952, granting Lessee permission to sublease said premises, in accordance with the terms and provisions of that certain sublease agreement of even date by and between THOMAS DISTRIBUTING COMPANY and O'KEEFE & MERRITT Co., a copy of which has been furnished the Lessor;

"(2) The Lessee hereby acknowledges and reaffirms Lessee's primary liability to the Lessor for the payment of the rental, and for the performance of each and all of the terms, covenants and conditions contained in that certain lease hereinabove referred to;

"(3) The Lessee must obtain from the Lessor written consent for any subsequent subleases entered into by the Lessee affecting said premises, as per the provisions of Paragraph 16-H of said lease;

"(4) In connection with any and all of such subleasing by the Lessee of said premises for any period or periods subsequent to May 31, 1953, it is agreed that any 'profits' received by the Lessee therefrom shall be divided equally between the Lessee and the Lessor, the Lessee hereby agreeing to pay one-half (½) of all such 'profits' to the Lessor as and when received. 'Profits' to the Lessee in connection herewith shall be defined as any and all amounts received by the Lessee for the use and occupancy of said premises in excess of the amounts Lessee must pay for:

"(a) Rental installments paid or to be paid to the Lessor, calculated at the rate of Twelve Hundred Twenty-five ($1225.00) Dollars per month;

"(b) Taxes to be paid by Lessee under the provisions of Paragraph 16-A of said lease; and

"(c) Real Estate commissions and other bona fide expenses paid by Lessee in securing subleases for said premises.

"(5) Said lease shall be modified and amended by the deletion therefrom of Paragraphs 16-H and 16-I, and not otherwise;

"(6) It is understood by and acceptable to the Lessor that the Lessee has for the unexpired term of said lease retained the services of J. G. Helm Co., Realtors, as sole and exclusive leasing agents for said property for the purpose of obtaining subtenants as aforesaid, and said J. G. Helm Co. shall be paid by the Lessee such commissions as are applicable to all subleases concluded at the rate then prescribed by the Los Angeles Realty Board."

ises for a portion of Lessee's unexpired term to O'Keefe & Merritt Co.''

By this agreement the Bennetts agreed to consent to a sublease to O'Keefe and Merritt Company. The supplemental agreement contained this provision:

"In connection with any and all of such subleasing by the Lessee of said premises for any period or periods subsequent to May 31, 1953, it is agreed that any 'profits' received by the Lessee therefrom shall be divided equally between the Lessee and the Lessor, the Lessee hereby agreeing to pay one-half (½) of all such 'profits' to the Lessor as and when received. 'Profits' to the Lessee in connection herewith shall be defined as any and all amounts received by the Lessee for the use and occupancy of said premises in excess of the amounts Lessee must pay for:

"(a) Rental installments paid or to be paid to the Lessor, calculated at the rate of Twelve Hundred Twenty-five ($1225.00) Dollars per month;

"(b) Taxes to be paid by Lessee under the provisions of Paragraph 16-A of said lease; and

"(c) Real Estate commissions and other bona fide expenses paid by Lessee in securing subleases for said premises.''

Concurrently with the execution of the supplemental agreement, Thomas entered into a sublease of the realty with O'Keefe and Merritt Company. The rental was $1,225 a month through April 1953. O'Keefe and Merritt was given an option to extend the sublease for one year at a rental of $2,100 a month. Two additional options were given for one year each at the same rental. O'Keefe and Merritt exercised the first option and occupied the property for the first eight months of that option year, or until December 31, 1953.

On November 1, 1952, Thomas Distributing Company and Nelson R. Thomas executed to plaintiff their promissory note for $15,000 payable in unequal installments, the first installment due December 15, 1952; the last, November 15, 1953. On December 15, 1952, Thomas Distributing Company executed a written assignment which—after reference to the Bennett-Thomas lease, to the supplemental agreement, and to the fact that Thomas had executed a sublease to O'Keefe and Merritt—assigned to plaintiff "its share of any 'profits' which Thomas Distributing Company is entitled to receive by virtue of or arising out of any of the documents referred to herein. Nothing contained herein shall be construed as assigning anything other than Thomas Distributing Company's

share of the 'profits'."[2]   On March 18, 1953, a copy of the assignment was received by E. W. Bennett.

Under the Bennett-Thomas lease, Thomas was obligated to pay the taxes on the realty.  During the early part of 1953 Thomas was in financial difficulty and could not pay the taxes. On April 8, 1953, Thomas requested E. W. Bennett to pay the

[2]The assignment reads:

"This assignment is made with respect to the following facts:

"1. On March 21, 1950, a lease was executed by and between E. W. BENNETT and EMMA K. BENNETT, as lessors, and THOMAS DISTRIBUTING COMPANY (formerly Nelson R. Thomas Agency, Inc.), a California corporation, as lessee, covering the premises in the City and County of Los Angeles, State of California, particularly described as: [description].

"The term of said lease is ten years, ending on July 31, 1960, at a total rental of $147,000.00, payable in monthly installments of $1225.00.

"2. On May 22, 1952, a sublease was executed wherein Thomas Distributing Company is designated as lessor and O'Keefe & Merritt Co., a California corporation, is designated as lessee, covering the real property described in the lease mentioned in paragraph 1 above. The term of said sublease is for one year, ending on May 31, 1953, at a monthly rental of $1225.00. This lease provides that the rental shall be paid by the O'Keefe & Merritt Co. to E. W. Bennett, 4073 South Alameda Street, Los Angeles 58, California. An option is granted to O'Keefe & Merritt Co. to extend said sublease for three additional successive periods of one year each, said extended terms to commence, respectively, upon exercise of option on June 1, 1953, June 1, 1954, and June 1, 1955, except that the annual rental for each additional annual term shall be $25,200.00, payable in monthly installments of $2100.00.

"3. On May 22, 1952, an agreement was made between the lessor, E. W. Bennett and Emma K. Bennett, and the lessee, Thomas Distributing Company, granting permission to sublet the said property. Paragraph 4 of the said agreement provides that in connection with any and all subleasing for any period subsequent to May 31, 1953, any 'profits' received by the lessee shall be divided equally between the lessee and the lessor. Profits are construed to be any sums received in excess of the amounts the lessee must pay for rental at the rate of $1225.00 per month, taxes, and real estate commissions, and other bona fide expenses paid by lessee in securing subleases for the premises.

"4. Thomas Distributing Company is indebted to Lee Adler in the sum of $15,000.00, and, concurrently with the execution of this agreement, has executed a promissory note providing for the repayment of said $15,000.00, together with interest on unpaid balances at the rate of 7% per annum. The first installment is due and payable December 15, 1952, and the last installment is due and payable November 15, 1953. The installments are not equal.

"To secure the payment of the aforesaid promissory note and all attorneys' fees, costs, and other sums which may become due thereon or in connection therewith, the undersigned Thomas Distributing Company does hereby assign to Lee Adler its share of any 'profits' which Thomas Distributing Company is entitled to receive by virtue of or arising out of any of the documents referred to herein. Nothing contained herein shall be construed as assigning anything other than Thomas Distributing Company's share of the 'profits.'

"Without in anywise affecting this assignment, the said Lee Adler may bring action on said promissory note upon the default in any of the terms thereof."

second installment of taxes for 1952-1953 in the amount of $1,411.58, which Bennett did.

On December 17, 1953, the Bennetts and Thomas entered into an agreement in writing terminating the Bennett-Thomas lease of March 21, 1950, the termination to be effective December 31, 1953. In this agreement Thomas agreed to execute forthwith an agreement terminating the O'Keefe and Merritt sublease as of March 31, 1954, and assigned to the Bennetts all its interest in that sublease effective as of December 31, 1953. The O'Keefe and Merritt sublease was thereupon cancelled effective December 31, 1953. Concurrently with the execution of the agreement terminating the Bennett-Thomas lease, the Bennetts paid Thomas $8,500. The figure $8,500 was reached after negotiations and represented a return of part of the $14,700 paid the Bennetts by Thomas on execution of the lease of March 21, 1950. At the time of the execution of this agreement Thomas could not pay the first installment of taxes on the realty for 1953-1954, and it was paid by the Bennetts in the amount of $1,437.23.

On December 18, 1953, the Bennetts, as lessors, entered into a written lease of the realty with The Electric Corporation of Califorña as lessee. The term of the lease was ten years, commencng May 1, 1954. The rental was $1,825 a month; the Bennetts to pay the taxes.

The court found: 1. A petition has been filed in the Superior Court of the County of San Diego for judicial supervision of the winding up of Thomas Distributing Company, which action is pending. 2. The unpaid balance of the Adler-Thomas note is $9,000. 3. In order to secure permission of E. W. Bennett to make the O'Keefe and Merritt sublease, Nelson R. Thomas and Thomas Distributing Company agreed to cause any rentals during the term of that sublease to be paid directly to E. W. Bennett and authorized him to retain half of the excess of such rentals over $1,225 a month and to pay the remaining half to Thomas. 4. One-half the rental received by E. W. Bennett during the period the property was occupied by O'Keefe and Merritt subsequent to the time of the assignment to plaintiff and prior to the agreement to terminate the Bennett-Thomas lease after deducting rental at the rate of $1,225 a month, taxes, commissions, and bona fide expenses, is $556.69. One-half the rental received by E. W. Bennett under the O'Keefe and Merritt sublease for the months of January, February, March, and April 1954 after

deducting rental at the rate of $1,225 a month, taxes, commissions, and bona fide expenses, is $1,750. That rental would have been received by E. W. Bennett from O'Keefe and Merritt for those months but for the cancellation of its sublease as of December 31, 1953. Judgment was for plaintiff against Nelson R. Thomas for $9,000 and attorney's fees and against E. W. Bennett for $2,306.69. Plaintiff appeals from the part of the judgment which awards him $2,306.69 from E. W. Bennett and from the judgment as a whole in that it fails to grant him any relief against Emma K. Bennett.

■ The trial court concluded that the assignment from Thomas to plaintiff did not apply to the lease from the Bennetts to The Electric Corporation. Plaintiff argues that it did. We think the point is untenable. True, at the time the supplemental agreement was executed the parties thereto thought the Bennett-Thomas lease would continue for its full term and that on termination of the O'Keefe and Merritt sublease there might be further subleases. But their agreement was that any profits "received by the Lessee" should be divided equally. Thomas assigned to plaintiff "its share of any 'profits' which Thomas Distributing Company is entitled to receive by virtue of or arising out of any of the documents referred to herein." The documents referred to were the Bennett-Thomas lease, the supplemental agreement, the O'Keefe and Merritt sublease, and any other subleases Thomas, with the written consent of the Bennetts, might later execute. The assignment expressly says: "Nothing contained herein shall be construed as assigning anything other than Thomas Distributing Company's share of the 'profits.'" No rights were assigned to plaintiff other than the right to receive a share of the "profits" from subleases if and when received by Thomas. Plaintiff acquired no rights in the Bennett-Thomas lease or in the supplemental agreement. The assignment did not give plaintiff any rights in nonexistent subleases but only in the O'Keefe and Merritt sublease and other subleases if and when they ripened into existence. (*Cf. Cox.* v. *Hughes,* 10 Cal.App. 553, 557 [102 P. 956].) Since the only sublease which was entered into by Thomas was that with O'Keefe and Merritt, the assignment was limited to "profits" from that sublease.

■ Plaintiff argues that under the terms of the assignment he is entitled to receive from the Bennets the $8,500 they paid Thomas on cancellation of the Bennett-Thomas lease. This sum does not come within the definition of "profits" as

it is defined either in the supplemental agreement or the Thomas to plaintiff assignment. It was a return of part of a remaining balance of the deposit of future rent made by Thomas at the inception of the Bennett-Thomas lease. No "profits" were received by Thomas by reason of the Bennett-Thomas lease or by reason of the supplemental agreement, as plaintiff argues. The supplemental agreement specifically says: "In connection with any and all of such *subleasing* by the Lessee of said premises for any period or periods subsequent to May 31, 1953, it is agreed that any 'profits' *received by the Lessee therefrom* shall be divided equally. . . ." (Italics added.) Profits could arise only from subleases actually executed.

Plaintiff asserts that after a right has been assigned and the obligor has been notified of the assignment, he may not deal with the assignor as the owner of the right nor may he contrive with the assignor to defeat the assignee's rights. The argument is that by cancelling the Bennett-Thomas lease after the Bennetts received notice of the assignment to plaintiff, Thomas ceded to the Bennetts its share of the profits from subleasing, and that thereby the Bennetts contrived with Thomas to defeat plaintiff's right. The argument overlooks the fact that implicit in the court's findings is the implied finding that the Bennett-Thomas lease was cancelled in good faith because of the financial condition of Thomas and that it was in default and the fact that the finding is supported by substantial evidence. In view of those facts the court was justified in concluding the Bennetts acted in good faith in cancelling the Bennett-Thomas lease and that they did not contrive with Thomas to defeat plaintiff's rights.

Plaintiff refers us to *Jones* v. *Martin,* 41 Cal.2d 23 [256 P.2d 905], *Nelson* v. *Fernando Nelson & Sons,* 5 Cal.2d 511 [55 P.2d 859], *Greenlee* v. *Los Angeles Trust etc. Bank,* 171 Cal. 371 [155 P. 383], and *Nineteenth Realty Co.* v. *Diggs,* 134 Cal.App. 278 [25 P.2d 522]. These cases have no bearing on the questions whether plaintiff is entitled to receive from the Bennetts part of the rental under The Electric Corporation lease or to the $8,500 paid Thomas on cancellation of the Bennett-Thomas lease. They state the well established rule that ordinarily an obligor will not be discharged from his obligation to his obligee's assignee by performance rendered to the assignor after notice of the assignment. O'Keefe and Merritt was the obligor, Thomas the obligee and assignor, plaintiff the assignee. The rule would apply in an action by

plaintiff against O'Keefe and Merritt in the event the latter paid the rental under its sublease to Thomas rather than to plaintiff after notice of the assignment to plaintiff.

The trial court held that the right of plaintiff to "profits" extended to the unexpired term of the O'Keefe and Merritt sublease and gave him judgment against E. W. Bennett for Thomas' share of those profits which the Bennetts had received and which they would have received had the O'Keefe and Merritt sublease continued for its full term. Plaintiff is not entitled to more. As assignee he stood in the shoes of his assignor, Thomas; i.e., he took subject to all equities and defenses which existed in favor of the Bennetts. █ A party to a contract may assert as against an assignee of the other party any right which he could assert against the latter. Plaintiff had no greater right than Thomas had under the Bennett-Thomas lease and the supplemental agreement. (*Bliss* v. *California Coop. Producers*, 30 Cal.2d 240, 250 [181 P.2d 369, 170 A.L.R. 1009]; *Parker* v. *Funk*, 185 Cal. 347, 352-353 [197 P. 83]; *Pacific Rolling Mill Co.* v. *English*, 118 Cal. 123, 129 [50 P. 383].) █ The rights of Thomas were subject to cancellation on its default, as provided in the lease. All rights of Thomas, and consequently all right to sublease, fell on cancellation of the Bennett-Thomas lease. In *Herman* v. *Campbell*, 86 Cal.App.2d 762 [195 P.2d 801], this court quoted with approval from 32 American Jurisprudence 746, thus (p. 766):

" 'Where a cause of forfeiture has arisen, the fact that the lessee consents to the enforcement of the forfeiture does not render the transaction a surrender as distinguished from a forfeiture so as to bring it within the rule that a lesseee cannot by a surrender affect the estate or the interest of third persons held under him' etc."

The judgment is incomplete. It does not adjudicate the issues between plaintiff and Emma K. Bennett except as a judgment in her favor may be implied from its failure to adjudicate against her. Plaintiff contends the court erred in not rendering judgment in his favor against Emma K. Bennett. He argues she was one of the lessors in the Bennett-Thomas lease; she was a party to the supplemental agreement; she signed the agreement terminating the Bennett-Thomas lease; she "benefited from the transaction in exactly the same manner and to the same extent as E. W. Bennett." The Bennetts ignore the point and make no mention of it. We assume, therefore, they concede it to be well taken. It

would appear to be. (See *Vierra* v. *Pereira,* 12 Cal.2d 629 [86 P.2d 816] ; *Flanery* v. *Mudd,* 86 Cal.App.2d 250, 255 [194 P.2d 806].)

The judgment against E. W. Bennett is affirmed. Insofar as the judgment fails to specifically determine the issues between plaintiff and Emma K. Bennett, it is reversed with directions to the superior court to render judgment in favor of plaintiff and against Emma K. Bennett in the same amount as it now stands against E. W. Bennett.

Shinn, P. J., and Wood (Parker), J., concurred.