411 S.E.2d 478

**HAYS AND COMPANY, a Corporation, Appellee,**

**v.**

**ANCRO OIL & GAS, INC., a Corporation, E.V. Byard, Adeline Line, Barbara Reems, A.G. Anderson, Hobert Kincaid, Eunice Krebs, Hospital Development Company, a Corporation, Kathleen Young, and Dan C. Anderson, Defendants Below, Appellees,**

**B.R. Hays, G.V. Adams, Charles Adams, Gregory V. Adams, Betty Jane Goodwin, and Christine M. Hedges, Administratrix of the Estate of Elizabeth Hedges, Appellants.**

**No. 20213.**

Supreme Court of Appeals of West Virginia.

Submitted Sept. 11, 1991.

Decided Nov. 15, 1991.

Richard H. Brumbaugh, Spencer, for appellees Ancro Oil & Gas, Inc. and Dan C. Anderson.

George M. Scott, Spencer, for appellants.

MILLER, Chief Justice:

The appellants, B.R. Hays, G.V. Adams, Charles Adams, Gregory V. Adams, Betty Jane Goodwin, and Christine M. Hedges, Administratrix of the Estate of Elizabeth Hedges (assignors), appeal a final order of the Circuit Court of Roane County, dated December 21, 1990, granting summary judgment in favor of Ancro Oil & Gas, Inc., and Dan C. Anderson (assignees). The critical issue on appeal is whether the assignors of an oil and gas lease are entitled to sale proceeds accrued, but held in escrow, prior to the assignment.

## I.

The assignors had an undivided working interest in two oil and gas wells located in Roane County. Hays and Company is a corporation engaged in distributing income from the sale of oil and gas, including the income from the two wells at issue.

In 1978, a dispute concerning the price of natural gas arose between several independent oil and natural gas producers, including the assignors, and a purchaser of natural gas, Consolidated Gas Transmission Corporation (Consolidated). Proceedings to resolve the dispute were held before the Federal Energy Regulatory Commission (FERC). While the FERC proceedings were pending, Consolidated continued paying the independent oil and gas producers the old rate and placed in escrow the difference between that rate and the proposed new rate.

In 1981 and 1982, several of the owners of the undivided leasehold interest assigned their interests to Dan C. Anderson. The assignment provided, in pertinent part:

"[T]he said Assignor does hereby sell, transfer, set over and assign unto the said Assignee, all right, title, and interest in and to that certain oil and gas lease and oil and gas leasehold estate created thereby, covering a tract [description of 82–acre tract].

"Together with all Working Interest in those certain wells situate on said leasehold known as Groves No. 1 and Groves No. 2, together with appurtenances thereto."

Thereafter Anderson assigned his interest in the two wells to Ancro Oil & Gas, Inc. (Ancro), a corporation wholly owned by him.

In late 1985, the FERC litigation was settled, and Hays was authorized to distribute the escrow funds. The assignors and the assignees both contended that they were entitled to the oil and gas proceeds that had been placed in escrow and had accrued prior to the assignment. The assignors claimed that the leasehold interest they sold did not include profits realized prior to the assignments. Ancro claimed that under the plain language of the assignment, it received "all right, title and interest" which included the escrowed funds. Hays, as stakeholder of the funds realized from escrow, filed this interpleader action to determine which party it should pay.[1]

## II.

■ Our longstanding rule on when it is appropriate to grant summary judgment is found in Syllabus Point 3 of *Aetna Casualty & Surety Co. v. Federal Insurance Co.,* 148 W.Va. 160, 133 S.E.2d 770 (1963):

"A motion for summary judgment should be granted only when it is clear that there is no genuine issue of fact to be tried and inquiry concerning the facts is not desirable to clarify the application of the law."

*See also Stemple v. Dobson,* 184 W.Va. 317, 400 S.E.2d 561 (1990); *Beard v. Beckley Coal Mining,* 183 W.Va. 485, 396 S.E.2d 447 (1990); *Pauley v. Pauley,* 164 W.Va. 349, 263 S.E.2d 897 (1980); *Parkway Fuel Serv. Co. v. Pauley,* 164 W.Va. 344, 263 S.E.2d 893 (1980).

## III.

■ With this standard as guidance, we address the merits of the controversy. Initially, we observe that the assignment forms were prepared by the attorney of the original assignee, Anderson. As we explained in *Western v. Buffalo Mining Co.,* 162 W.Va. 543, 546, 251 S.E.2d 501, 503 (1979): "An assignment does not differ in its essential elements from any other contract. *Conservative Life Insurance Co. v. National Exchange Bank of Wheeling,* 118 W.Va. 44, 188 S.E. 755 (1936)." Thus, as with contracts in general, "any ambiguity in [an assignment] must be resolved against the party who prepared it." *Nisbet v. Watson,* 162 W.Va. 522, 530, 251 S.E.2d 774, 780 (1979). (Citations omitted). *See also Henson v. Lamb,* 120 W.Va. 552, 199 S.E. 459 (1938); *Charlton v. Chevrolet Motor Co.,* 115 W.Va. 25, 174 S.E. 570 (1934).

■ There is no language in the assignments regarding the escrow funds, even though both the assignees and the assignors were aware of them when the leases were assigned. The absence of any language in the assignments relating to the escrowed funds creates an ambiguity. In Syllabus Point 1 of *Leasetronics, Inc. v. Charleston Area Medical Center, Inc.,* 165 W.Va. 773, 271 S.E.2d 608 (1980), we outlined the procedure to be followed when construing written agreements:

" ' "While the general rule is that the construction of a writing is for the court; yet where the meaning is uncertain and ambiguous, parol evidence is admissible to show the situation of the parties, the surrounding circumstances when the

---

1. Rule 22 of the West Virginia Rules of Civil Procedure provides:

"Persons having claims against the plaintiff may be joined as defendants and required to interplead when their claims are such that the plaintiff is or may be exposed to double or multiple liability. It is not ground for objection to the joinder that the claims of the several claimants or the titles on which their claims depend do not have a common origin or are not identical but are adverse to and independent of one another, or that the plaintiff avers that he is not liable in whole or in part to any or all of the claimants. A defendant exposed to similar liability may obtain such interpleader by way of cross-claim or counterclaim. The provisions of this rule supplement and do not in any way limit the joinder of parties permitted in Rule 20."

writing was made, and the practical construction given to the contract by the parties themselves either contemporaneously or subsequently. If the parol evidence be not in conflict, the court must construe the writing; but, if it be conflicting on a material point necessary to interpretation of the writing, then the question of its meaning should be left to the jury under proper hypothetical instructions." Syllabus Point 4, *Watson v. Buckhannon River Coal Co.*, 95 W.Va. 164, 120 S.E. 390 (1923).' Syllabus Point 1, *McShane v. Imperial Towers, Inc.*, [165 W.Va. 94], 267 S.E.2d 196 (1980)."

 Finally, it is generally recognized that "[i]n the absence of stipulation the assignment of profits or earnings under contracts, or arising out of property, is usually held to mean an assignment of profits or earnings accruing subsequently to the assignment." 6A C.J.S. *Assignments* § 75 at 718 (1975). (Footnote omitted). *See, e.g. Adler v. Thomas Distrib. Co.*, 148 Cal.App.2d 584, 307 P.2d 14 (1957); *Fidelity Reserve & Loan Co. v. Lincoln County Logging Co.*, 144 Or. 45, 23 P.2d 905 (1933); *Himes v. Cameron County Constr. Corp.*, 497 Pa. 637, 444 A.2d 98 (1982). Thus, unless otherwise provided for in the assignment, the assignor retains the right to the income and profits that have already accrued on the assigned property at the time the property is transferred.

## IV.

We conclude that the trial court erred in granting summary judgment for the assignees. Accordingly, the judgment of the Circuit Court of Roane County is reversed, and the case is remanded for further proceedings consistent with this opinion.

*Reversed and Remanded.*