680 S.E.2d 59

**Jacob Frederick JOCHUM, Sr., and Jacob Frederick Jochum, Jr., d/b/a Jochum Truck Service, Plaintiffs Below, Appellants**

v.

**WASTE MANAGEMENT OF WEST VIRGINIA, INC., et al., Defendants Below, Appellees.**

No. 34264.

Supreme Court of Appeals of West Virginia.

Submitted Feb. 25, 2009.

Decided May 19, 2009.

**46**

Melvin W. Kahle, Jr., Esq., Frank X. Duff, Esq., John Jurco, Esq., Schrader, Byrd & Companion, PLLC, Wheeling, for Appellants.

Edward J. George, Esq., Matthew S. Casto, Esq., Robinson & McElwee, PLLC, Charleston, for Appellee, Waste Management

Samuel F. Hanna, Esq.

Hanna Law Office, Charleston, for Appellees, American Disposal, et al.

PER CURIAM:

In the instant case, the appellants, Jacob Jochum, Sr., and Jacob Jochum, Jr., d/b/a Jack Jochum Truck Service, appeal the October 1, 2007, order of the Circuit Court of Ohio County granting summary judgment in favor of the appellee, Waste Management. The Jochums filed a complaint in the Circuit Court of Ohio County on November 6, 2006, alleging that Waste Management breached an asset purchase agreement wherein it had agreed to buy the Jochums' waste disposal business. In the final order, the circuit court found that two conditions precedent to the contract in question, §§ 9(d) and 9(e), had not been satisfied and, therefore, Waste Management had the right to terminate the agreement. In this appeal, the Jochums contend that genuine issues of material fact exist with regard to whether or not §§ 9(d) and 9(e) were satisfied. After reviewing the facts of the case, the issues presented, and the relevant statutory and case law, this Court reverses the decision of the circuit court and remands this case for further proceedings.

## I.

### FACTS

On March 8, 2004, the appellants, Jacob Jochum, Sr., and Jacob Jochum, Jr., d/b/a Jack Jochum Truck Service, and the appellee, Waste Management of West Virginia, Inc., entered into an Asset Purchase Agreement (hereinafter, the "Agreement") wherein Waste Management agreed to purchase Jack Jochums Truck Service for $465,000.00. Jack Jochum Truck Service provides waste disposal services, which includes retrieving, transporting, and disposing of residential, commercial, and industrial garbage in Ohio and Marshall Counties, West Virginia.

The Agreement between the parties provided for the purchase of all of the Jochums' business assets, which included the transfer of the Jochums' certificates of convenience and necessity (hereinafter, the "Certificates"). The Certificates allowed the Jochums to provide waste disposal services in Ohio and Marshall Counties. As provided by W.Va.Code § 24A-2-5 (1980), it was "unlawful for any common carrier by motor vehicle to operate within this state without first having obtained from the [Public Service Commission of West Virginia (hereinafter, the "PSC")] a certificate of convenience and necessity." Transferring the Certificates from the Jochums to Waste Management would have permitted Waste Management to enter the West Virginia solid waste hauling market in Ohio and Marshall Counties and cross

state lines in the transportation of solid waste.

On March 22, 2004, the Jochums and Waste Management initiated proceedings before the PSC to obtain approval of the transfer of the Certificates. The potential transfer of the Certificates to Waste Management was protested by another existing regulated hauler in the area, American Disposal Services of West Virginia, Inc. (hereinafter, "ADS").[1] On December 28, 2005, the PSC issued an order granting approval of the transfer of the Certificates to Waste Management. Soon thereafter, ADS petitioned this Court to hear an appeal of the PSC's order, and on June 9, 2006, we denied the petition.

On April 11, 2006, while ADS' petition for appeal of the PSC's December 28, 2005, order was pending before this Court, the United States Magistrate for the United States District Court for the Southern District of West Virginia issued a decision in *Harper, et al. v. Public Service Commission of West Virginia, et al.*, 427 F.Supp.2d 707 (S.D.W.Va.2006). In *Harper*, the District Court "declared that W.Va.Code § 24A–2–5 [was] invalid insofar as it require[d] solid waste haulers engaged in the interstate transportation of solid waste to obtain a certificate of convenience and necessity from the PSC prior to providing those services." 427 F.Supp.2d at 724. The Court in *Harper* "permanently enjoined" the PSC from interfering in the "interstate transportation of solid waste from West Virginia to other states" with regard to a business' failure to obtain a certificate of convenience and necessity. *Id.* As a result of the *Harper* decision, the certificates were never actually transferred to Waste Management.[2]

Thereafter, on April 26, 2006, Waste Management gave notice to the Jochums that it was terminating the parties' Agreement pursuant to § 9(e), stating that the *Harper* deci-

sion adversely affected the value of the Jochums' Certificates and, thus, made the transaction less economic. Section 9(e) of the Agreement provided:

NOW, THEREFORE, in consideration of the foregoing premises and the mutual covenants herein contained, and intending to be legally bound, the parties agree as follows:

9. CONDITIONS TO BUYER'S CLOSING. All obligations of Buyer to close hereunder are subject to fulfillment by Seller or waiver by Buyer, prior to or on the date of Closing of the following conditions:

(e) No law, rule, regulation, order, writ or judgment of any court, arbitrator or other agency of government or any agreement to which Buyer or an affiliate of Buyer is bound shall have prevented or prohibited or make less economic the consummation of the transactions contemplated hereby.

Upon receiving Waste Management's notice that it was terminating the Agreement, the Jochums, on November 6, 2006, filed a complaint in the Circuit Court of Ohio County alleging that Waste Management breached the Agreement by terminating the contract. On February 22, 2007, Waste Management filed a motion for summary judgment. By an order entered on October 1, 2007, the circuit court granted Waste Management's motion for summary judgment finding that two conditions precedent to the contract in question, §§ 9(d) and 9(e), had not been satisfied and, therefore, Waste Management had the right to terminate the Agreement. Specifically, the circuit court found that,

no dispute exists as to the facts material to the adjudication of the issues in this case: whether [Waste Management] breached the Agreement with the [Jochums], whether § 9(e) of the Agreement is ambiguous,

---

1. ADS filed a Reply Brief in this matter for the purpose of disputing the allegation by the Jochums that: "Due to delays caused by [ADS], a competitor which opposed the agreement, the PSC didn't approve the transfer until December, 2005." ADS states that it was exercising its statutory and constitutional right to protest the transfer application of the Certificates and that

any "delays" in the appeal process at the PSC were not caused by ADS.

2. On December 11, 2006, at the request of Waste Management, the PSC revoked its previous approval of the transfer of the Certificates. The Jochums did not appeal the PSC's order.

and whether a law was passed making the sale of the [Jochums'] business less economic.

This appeal followed.

## II.

### STANDARD OF REVIEW

▇▇▇ The Jochums contend that the circuit court erred in granting summary judgment to Waste Management. In Syllabus Point 1 of *Painter v. Peavy*, 192 W.Va. 189, 451 S.E.2d 755 (1994), this Court stated that "[a] circuit court's entry of summary judgment is reviewed *de novo.*" Pursuant to Rule 56 of the West Virginia Rules of Civil Procedure, summary judgment is required when the record shows that there is "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." In Syllabus Point 3 of *Aetna Casualty & Surety Co. v. Federal Ins. Co. of New York*, 148 W.Va. 160, 133 S.E.2d 770 (1963), this Court held: "A motion for summary judgment should be granted only when it is clear that there is no genuine issue of fact to be tried and inquiry concerning the facts is not desirable to clarify the application of the law."

▇▇▇ Moreover, "[s]ummary judgment is appropriate if, from the totality of the evidence presented, the record could not lead a rational trier of fact to find for the nonmoving party, such as where the nonmoving party has failed to make a sufficient showing on an essential element of the case that it has the burden to prove." Syllabus Point 2, *Williams v. Precision Coil, Inc.*, 194 W.Va. 52, 459 S.E.2d 329 (1995). In addition, "[i]f the moving party makes a properly supported motion for summary judgment and can show by affirmative evidence that there is no genuine issue of a material fact, the burden of production shifts to the nonmoving party who must either (1) rehabilitate the evidence attacked by the moving party, (2) produce additional evidence showing the existence of a genuine issue for trial, or (3) submit an affidavit explaining why further discovery is necessary as provided in Rule 56(f) of the West Virginia Rules of Civil Procedure." Syllabus Point 3, *Williams v.*

*Precision Coil, Inc.*, 194 W.Va. 52, 459 S.E.2d 329 (1995). With these standards in mind, we proceed to consider the Jochums' arguments.

## III.

### DISCUSSION

▇▇▇ The issue in this appeal is whether the circuit court's granting of Waste Management's motion for summary judgment was appropriate. The Jochums first argue that summary judgment was not proper because genuine issues of material fact exist as to whether or not § 9(e) of the Agreement was satisfied or violated. In that regard, the Jochums contend that the phrase "less economic" in § 9(e) is ambiguous. We agree.

The Jochums argue that "less economic" means less profitable, not that a better deal may be struck elsewhere if the Jochums' Certificates need not be purchased in light of *Harper.* Moreover, the Jochums maintain that their business actually became more profitable after the decision in *Harper.* They state that the profitability of the entire area subject to the Jochums' Certificates depends on the Jochums' customer base, not the Certificates, which weren't even assigned a value in the Agreement. With this in mind, the Jochums submit that their gross revenues increased from $16,300.00 in March, 2006, and $16,303.61 in January, 2007, to $17,616.84 in June, 2007. They assert that at the time of the filing of their brief in this Court, their revenues were approximately $17,000.00, and expected to remain at those levels. As such, since their business is not currently less profitable, they argue that Waste Management could not void the Agreement under § 9(e).

Conversely, Waste Management asserts that the terminology used in the Agreement was a good faith effort to include any type of situation that would render the contract less economic, including specifically stating that any "law, rule, regulation, order writ or judgment of any court, arbitrator, or other agency of government." It argues that the *Harper* decision falls squarely within these specified categories, as it was an "order" of a federal "court." Further, it explains that

§ 9(e) includes broad language agreed to by both parties, which states that developments of any of the kinds specified that would render the consummation of the transaction "less economic" were to be the risk of the seller prior to closing the Agreement, and the risk of the buyer after closing. It points out that had the *Harper* decision been rendered after closing, then, under those circumstances, it would have been Waste Management's bad fortune. It states that the Jochums engaged in the negotiation of the terms of the Agreement and entered into it voluntarily, knowingly, and intelligently.

This Court has explained that "[t]he term 'ambiguity' is defined as language reasonably susceptible of two different meanings or language of such doubtful meaning that reasonable minds might be uncertain or disagree as to its meaning." Syllabus Point 4, *Estate of Tawney v. Columbia Natural Resources, L.L.C.*, 219 W.Va. 266, 633 S.E.2d 22 (2006). In addition, we have long held that " '[u]ncertainties in an intricate and involved contract should be resolved against the party who prepared it.' Syllabus Point 1, *Charlton v. Chevrolet Motor Co.*, 115 W.Va. 25, 174 S.E. 570 (1934)." Syllabus Point 8, *Estate of Tawney supra*. *See also, Combs v. McLynn*, 187 W.Va. 490, 493, 419 S.E.2d 903, 906 (1992); *Hays and Co. v. Ancro Oil & Gas, Inc.*, 411 S.E.2d 478, 480, 186 W.Va. 153, 155 (1991); *Smith v. Municipal Mut. Ins. Co.*, 289 S.E.2d 669, 671–672 169 W.Va. 296, 301 (1982); *Nisbet v. Watson*, 251 S.E.2d 774, 780, 162 W.Va. 522, 530 (1979); and *Henson v. Lamb*, 120 W.Va. 552, 199 S.E. 459 (1938).

In the case at hand, we are not persuaded by Waste Management's contention that "less economic" was an unambiguous term in the parties' Agreement. To the contrary, the evidence of record illustrates that there was significant confusion surrounding the meaning of that provision. For example, Mr. Jochum, Jr. stated in his affidavit that he believed "make less economic the consummation of the transactions contemplated hereby," would only apply if new laws, PSC regulations, or taxes increased Waste Management's cost of continuing the Jochums' business, resulting in less profit. Similarly, Mr. Jochum, Sr. stated in his affidavit that he "did not understand nor intend the provision to mean that Waste Management could repudiate the agreement simply because it believes it no longer has to purchase Certificates to operate waste disposal in West Virginia, or that it could use it to renege on the agreement without showing how it would lose money."

The Jochums, in disputing the meaning of "less economic," submitted evidence that their business is actually more profitable today than it was when Waste Management provided notice that it wished to void the underlying Agreement. Waste Management, on the other hand, contends that "less economic" is distinguishable from less profitable. Both parties provide a reasonable analysis concerning their individual interpretations of "less economic." Had Waste Management drafted a more clear and precise document that included a definition of "less economic," as well as cited the pending *Harper* decision, this may have been a different case. However, that is not the situation at hand and, therefore, we find that the undefined terms "less economic" are ambiguous, leaving room for multiple interpretations.

This Court has held that: " ' "Where a contract is ambiguous then issues of fact arise and summary judgment is ordinarily not proper." Syl. Pt. 2, *Lee Enterprises, Inc. v. Twentieth Century–Fox Film Corp.*, 172 W.Va. 63, 303 S.E.2d 702 (1983). Syllabus Point 2, *Buckhannon Sales Co. v. Appalantic Corp.*, 175 W.Va. 742, 338 S.E.2d 222 (1985).' Syllabus Point 2, *Glenmark Associates, Inc. v. Americare of W. Va., Inc.*, 179 W.Va. 632, 371 S.E.2d 353 (1988)." Syllabus Point 1, *Ohio Valley Contractors, Inc. v. Board of Educ. of Wetzel County*, 182 W.Va. 741, 391 S.E.2d 891 (1990). Given the ambiguity of the contract and the lack of evidence developed below, the circuit court's award of summary judgment was improper as there are genuine issues of material fact with regard to the parties' interpretation of "less economic." Therefore, the judgment of the circuit court is reversed, and the case is remanded for further proceedings consistent with this opinion.

■ In a separate argument, the Jochums state that the circuit court erred in ruling that: "When the *Harper* ruling was decided on April 11, 2006, the issue of whether the Certificates transfer would gain governmental approval was still undecided, thus, failing to satisfy the condition set forth in Section 9(d) of the Agreement." Section 9(d) provides,

> All obligations of Buyer to close hereunder are subject to fulfilment by Seller or waiver by Buyer, prior to or on the date of Closing, of the following conditions:

> (d) Seller and Buyer shall have received all necessary governmental consents, including the approval of the West Virginia Public Service commission and the consents to the assignment of Seller's customers including any municipal contract that may exist.

The Jochums state that the PSC approved the transfer of the Jochums' Certificates to Waste Management in December, 2005, following a delay caused by ADS, a competitor which opposed the Agreement between the Jochums and Waste Management. In June, 2006, this Court refused ADS' petition for appeal of that decision. The Jochums believe that § 9(d) was satisfied in December, 2005, notwithstanding ADS' appeal. They point out that West Virginia Rules of Appellate Procedure Rule 6 provides that, "Any person desiring to present a petition for an appeal may make application for a stay of proceedings to the circuit court in which the judgment or order desired to be appealed was entered." In this case, neither ADS, nor Waste Management, moved the PSC to stay the effects of the order.

Waste Management responds that it is irrelevant whether or not the PSC initially approved the transfer of the Certificates in December, 2005, because they were not actually transferred prior to Waste Management's April 26, 2006, notice of termination. Thus, it contends that § 9(d) was not satisfied prior to closing the Agreement. Waste Management further asserts that governmental approval for the transfer of the Certificates was not final in December, 2005, and that final governmental approval for the transfer of the Certificates was dependant on the outcome of the petition for appeal filed by ADS. Therefore, it believes that the PSC's

approval was not finalized until June 9, 2006, when this Court denied ADS' petition for appeal. Accordingly, since the *Harper* decision was issued on April 11, 2006, and Waste Management gave notice to the Jochums on April 26, 2006, that it was terminating the parties' Agreement pursuant to § 9(e), Waste Management argues that the provisions of § 9(d) were not satisfied prior to closing.

We find Waste Management's argument on this issue unpersuasive and without merit. It was Waste Management who provided notice on April 26, 2006, that it wished to terminate the Agreement based upon the *Harper* decision and not based upon § 9(d). It was also Waste Management who requested that the PSC revoke its earlier grant of approval of the transfer of the Certificates due to the fact that it no longer wished to complete the Agreement with the Jochums. It is important to point out that Waste Management did not make such a request of the PSC until *after* it had already provided notice of termination of the Agreement to the Jochums. Moreover, it is equally significant to acknowledge that after the decision in *Harper* was rendered, Waste Management no longer needed the Certificates to conduct business in West Virginia. The bottom line with regard to this issue is that Waste Management attempted to terminate the Agreement pursuant to § 9(e) in relation to the issuance of the *Harper* decision. Thus, any reference by the circuit court to § 9(d) was not relevant to resolve the Jochums' underlying complaint because Waste Management sought termination of the Agreement for an entirely separate reason.

■ Assuming, *arguendo*, that § 9(d) was applicable to determine whether or not Waste Management properly terminated the underlying Agreement, the record before the circuit court was not sufficient to allow for such a determination. While the Jochums were required to obtain approval for transfer of the Certificates prior to closing, nothing in the Agreement provided a deadline date for such transfer. Moreover, there is no language in the Agreement stating that such transfer of the Certificates had to occur prior to Waste Management's repudiation based upon other provisions of the Agreement. Indeed, "it is generally held that when a condition to be performed is not limited by an

agreement, the condition must be performed or abandoned within a reasonable time." *Heartland, L.L.C. v. McIntosh Racing Stable, L.L.C.*, 219 W.Va. 140, 150, 632 S.E.2d 296, 306 (2006). *See also,* Syllabus Point 2, *E. Shepherdstown Developers, Inc. v. J. Russell Fritts, Inc.*, 183 W.Va. 691, 398 S.E.2d 517 (1990). Accordingly, given the fact that § 9(d) was not limited by the Agreement, questions surrounding the reasonableness of any delay in transfer would have been issues to be resolved by a jury. *See, e.g., Howell v. Appalachian Energy, Inc.*, 205 W.Va. 508, 517, 519 S.E.2d 423, 432 (1999) ("What constitutes a 'reasonable period of time' is normally a question of fact"); *Stone v. United Engineering*, 197 W.Va. 347, 360, 475 S.E.2d 439, 452 (1996) ("The question of whether the vendee had a reasonable time to cure the defect or dangerous condition is a question of fact and is therefore for the jury"). In consideration of the aforementioned, the circuit court improperly granted summary judgment to Waste Management.[3]

## IV.

### CONCLUSION

Accordingly, for the reasons set forth above, the final order of the Circuit Court of Ohio County entered on October 1, 2007, is reversed and remanded for further proceedings consistent with this opinion.

Reversed and Remanded.

Chief Justice BENJAMIN, deeming himself disqualified, did not participate in the decision of this case.

Judge BLOOM sitting by temporary assignment.

---

**3.** The Jochums also make an allegation in their brief before this Court that Waste Management was required to comply with the Agreement under the covenant of good faith and fair dealing. This is the first time in this matter that the Jochums have made such an argument as this was not an issue before the circuit court. Waste Management contends that this Court's review is limited to the lower court's finding that there was no genuine issue of material fact that the conditions precedent were violated. We agree.

We explained in *Whitlow v. Board of Education of Kanawha County*, 190 W.Va. 223, 226, 438 S.E.2d 15, 18 (1993), that: "Our general rule in this regard is that, when nonjurisdictional questions have not been decided at the trial court level and are then first raised before this Court, they will not be considered on appeal." Therefore, the issue of whether or not Waste Management violated the covenant of good faith and fair dealing will not be considered on appeal.