[Civ. No. 6311.   Third Appellate District.—January 7, 1941.]

J. G. McDONALD, Appellant, v. GRAVENSTEIN APPLE GROWERS COOPERATIVE ASSOCIATION OF SONOMA COUNTY (a Corporation) et al., Respondents.

Barrett & McConnell and L. G. Scott for Appellant.

Libby & Finn for Respondents.

TUTTLE, J.—Plaintiff commenced an action to recover the sum of $159.66 from respondents. The latter filed a cross-complaint for $586.24. After trial by the court, findings were made in favor of defendants upon all the issues raised in the cross-complaint, and judgment was entered in their favor for the amount demanded. Plaintiff now appeals from the judgment.

Plaintiff was, during all the times herein mentioned, the owner of a ranch consisting of some thirty acres of bearing apple trees. On February 10, 1937, he leased the property to one Edward King, upon a share rental basis. Shortly thereafter King entered into negotiations with respondent Association for the purpose of securing an agency to handle his coming crop. He was told by the latter that they would not enter into a marketing contract with him unless *appellant* executed and signed it. This was explained to appellant, and he thereupon executed the contract as one of the parties of

the second part, King being the other. The agreement was in the following language:

"This agreement, made this 4th day of March, 1937, by and between Gravenstein Apple Growers Cooperative Association of Sonoma County, a corporation, hereinafter called first party, and J. G. McDonald *and* Edward E. King, hereinafter called second party,

### "WITNESSETH:

"1. That said second party hereby agrees to sell exclusively to or through the first party, or any facilities to be created by first party, all of the apples raised and produced during the period of *15* years from and after the date hereof on that certain property situate in the County of Sonoma, State of California, more particularly described as follows:

"*30 acres Gravenstein apples located 1–1/2 west of Sebastopol—estimated lugs 8000—10,000 including 1 acres of Late Apples—J. G. McDonald to receive ⅓ and Ed King ⅔—All spray materials except fertilizer ½ to come out of Ed King's part.* . . .

"4. It is agreed that said first party may sell or re-sell the apples delivered to it by second party with or without taking title thereto, and pay over to second party the resale price after deducting all necessary selling, overhead and other costs, expenses, and deductions provided for in the by-laws of said first party. . . .

"5. It is further agreed that this contract shall constitute a lien upon all of said apples for the repayment to first party of any and all advances made to said second party, or which shall be made to said second party, and that any and all of such advances may be withheld by first party from the proceeds of such apples. . . .

"7. Said first party agrees to pay to second party the net proceeds of all sales of said apples, after making the deductions authorized by the by-laws of said first party. . . ."

When the crop was sold, it brought $561.37. When appellant demanded his share of the proceeds, he was notified that advances had been made to King totalling $1147.61—$432.61 in goods, wares, and merchandise, and $715 in cash; that since the proceeds from the crop were not large enough to cover

the advances, his share was being withheld as an offset against them, and that he would be held personally liable for the remaining deficiency of $586.24.

It is the contention of appellant that the finding to the effect that *both* appellant and King, under said contract, received advances of cash from respondent-Association, and that certain articles were delivered to them by said respondent, is not supported by the evidence. He states that the record shows, without dispute, that such advances and merchandise were all received by King *alone*. We agree that appellant is correct, but as will hereafter appear, such a finding is not material in establishing the liability of appellant under said agreement and upholding the judgment.

It appears that respondent-Association would not sign the marketing agreement unless it was signed by appellant. This was clearly understood by appellant when he affixed his signature. The gist of the chief contention made by appellant is that he is not *primarily* liable upon the contract in the same manner and to the same extent as his co-signer, King, for the reason that he received none of the advances or supplies which are the basis of this action. In other words, appellant says he should not be forced to pay for something he never received. Assuming that there is merit in such contention, we are of the opinion that appellant, under the evidence, could be held primarily liable as a guarantor.

"A surety or guarantor is one who promises to answer for the debt, default or miscarriage of another, or hypothecates property as the security therefor." (Civ. Code, sec. 2787.)

The trial court could have impliedly found that appellant signed the contract, not as a principal, but as a guarantor, in order that his tenant could procure the capital and supplies for the properly carrying out of the lease. "Where a guaranty is entered into at the same time as the original obligation, or with the acceptance of the latter by the guarantee, and forms with that obligation a part of the consideration to him, no other consideration need exist." (Civ. Code, sec. 2792.) The guaranty here arises out of the original contract, and hence is supported by a legal consideration. Furthermore, "the delivery of the goods, upon the faith of a guaranty that they shall be paid for, constitutes a sufficient consideration for the guaranty." (12 R. C. L., sec. 29, p. 1078.) The promise to pay is absolute and unconditional;

therefore, the liability of the guarantor is fixed when the principal obligation matures, and is not predicated upon the exhaustion by the creditor of his remedy against the original debtor. (13 Cal. Jur., sec. 22, p. 110). Applying the foregoing legal principles to the facts as established here, there was ample evidence to support an implied finding that appellant was primarily liable for the indebtedness, notwithstanding that he did not personally receive any of the money or goods which are the basis of the account.

It is contended by appellant that the contract is, in effect, a mortgage as to him, because there is no express promise to pay for the advances and supplies. This court has held that a contract containing almost identical terms, "necessarily implies that the grower will reimburse the Association for all such advances." (*California B. G. Assn.* v. *Williams,* 82 Cal. App. 434 [255 Pac. 751].) Here, there was an implied promise upon the part of the tenant to reimburse respondent-Association, and appellant guaranteed that such reimbursement would be made. This, accepting the theory of appellant, would take the agreement out of the category of a chattel mortgage. We might add that we can find no substantial evidence in the record to support a finding that the agreement was in fact a chattel mortgage, either between appellant and King, or with reference to third parties.

Next, it is contended by appellant that the foregoing underscored portion of the agreement limits the liability of appellant to one-half of the fertilizer expense. It was immaterial to respondent-Association how King and appellant apportioned, between themselves, the indebtedness to it. If King were personally responsible for the entire amount, appellant would still be liable as a guarantor for the repayment of such amount.

Finally, appellant refers to the provision of the contract which gives the Association a lien upon all the apples, and contends that no action can be brought until the security is exhausted, which, he says, would be fifteen years from the date of the agreement. This theory is based upon conclusion that the evidence shows, without dispute, that the whole transaction was intended to be a mortgage. The trial court impliedly found otherwise, upon sufficient evidence, as we have pointed out above.

In view of the foregoing, we deem it unnecessary to discuss the view of respondents that appellant can be held liable under the rule that: "A party is presumed to have assented to all the terms of a written contract when he signs it." (*Eldridge* v. *Mowry*, 24 Cal. App. 183 [140 Pac. 978].)

Appellant has received the benefit of a considerable amount of the supplies furnished for the proper care of his property. He knew exactly what he was signing, and it can be reasonably inferred that respondents entered into the contract relying upon the fact that appellant had signed it in the capacity of guarantor. Both justice and equity require that appellant should reimburse respondent-Association.

The judgment is affirmed.

Thompson, J., and Pullen, P. J., concurred.

A petition for a rehearing was denied February 6, 1941, and appellant's petition for a hearing by the Supreme Court was denied March 7, 1941.