[Civ. No. 17171.   First Dist., Div. One.   May 17, 1957.]

F. M. SCHAFER et al., Respondents, v. WHOLESALE FROZEN FOODS, INC. (a Corporation) et al., Appellants.

Leuenberger & Feldman, Philip S. Ehrlich and Irving Rovens for Appellants.

Myers & Meehan for Respondents.

WOOD (Fred B.), J.—Judgment for overdue rent was rendered in favor of plaintiffs F. W. Schafer and wife against their sublessee (Wholesale Frozen Foods, Inc.) and the sublessee's guarantors (Luce, Cornils and Hornstein). All of the defendants have appealed.

The leasehold premises consisted of a cold storage plant which the owners (referred to as the "Tildens" or the "Tilden interests") leased to plaintiff in 1945 for a five-year term, later extended for a term ending December 31, 1955. Plaintiff operated the plant until 1950, when he sublet to Stapland, Inc. About March 18, 1952, he consented to an assignment from Stapland to defendant Wholesale, released Stapland from further obligations under the sublease, gave Wholesale an option for an extension of the term, and received from

Luce, Cornils and Hornstein a written guaranty of performance by Wholesale of its obligations under the sublease.

■ (1) *Defendant guarantors contend that their execution of the guaranty contract was conditioned upon the Tildens giving written consent to the transfer of the sublease, a condition which did not occur.*

They are mistaken in this regard, the trial court found against this contention and substantial evidence supports the finding.

First, no such condition is expressed or indicated in the contract of guaranty itself.

Second, plaintiff Schafer testified "I don't believe the signing . . . by the guarantors hinged at all upon receiving the signatures of the Tildens. It was not discussed in that manner, . . . It was discussed after the signatures were placed upon the document, except my wife's signature." He had no idea that the Tildens' consent "had any bearing on it." The guarantors testified to the contrary but that merely produced a conflict which the trial court resolved in plaintiffs' favor.

We note, too, that Wholesale took possession and held possession for two years. That, plus the fact that the guarantors were the incorporators, the sole stockholders and also officers of Wholesale (Hornstein was a director, Cornils a director and president, and in a few months Luce became a director), furnished a basis for an inference that the parties by their conduct interpreted the transaction as the making of a guaranty without regard to obtaining the consent of the Tildens to the transfer of the sublease from Stapland to Wholesale.

Plaintiffs have moved to take additional evidence in support of their position on this point. We find the proffered evidence would be inconclusive if taken; also, unnecessary in view of our analysis of the evidence already in the record on this point.

(2) *Defendants assert that the contract of guaranty was without consideration.* They question a finding to the effect that defendants Hornstein, Cornils and Luce executed the guaranty contract "as a part of the consideration for . . . [plaintiffs'] . . . consent to assignment of sublease" from Stapland to Wholesale.* They say that plaintiffs' consent

---

*This was not the only finding on this subject. Plaintiffs also pleaded defendants' indebtedness in the form of a common count and the court found that the allegations thereof were true, also that there was not a failure of consideration for the guaranty contract.

was not legally necessary to effectuate the assignment and therefore incapable of constituting consideration for the guaranty contract. They predicate this statement upon an averment in plaintiffs' answer to the cross-complaint that "the assignment of said sublease did not require the consent of either the cross-defendants herein nor the original sub-lessors." That, of course, was a legal conclusion and apparently was disregarded by court and counsel at the trial. Both parties alleged that plaintiffs did execute the consent, in respect to which there was an issue whether or not plaintiffs' consent was conditioned upon the Tildens also consenting.

The sublease between Schafer and Stapland (it was pleaded *in haec verba* by the defendants) expressly declared that "Sublessee shall not, without the written consent of Sublessor, or either of Sublessors, assign this lease or any interest therein, or sublet the demised premises or any portion thereof except that Sublessee shall be permitted to enter into leases of storage space within said premises." Plaintiffs' counsel in his opening statement said that at the time of the signing of the documents he and counsel for defendants did not know whether or not plaintiffs' consent to the assignment of the sublease was necessary but felt it should be included. Defendants' counsel apparently agreed with that statement.

■ There is evidence that the assignment of the sublease by Stapland, the acceptance thereof by Wholesale, the consent thereto by plaintiffs, the option to Wholesale for extension of the term, and the guaranty contract were treated and handled by the parties as a single transaction. Luce testified that Schafer insisted he would not give the sublease to Wholesale unless he had personal guarantees on it and by that he meant the guaranteeing of payments of the rents by Cornils, Hornstein and Luce; he would not execute this consent unless the three persons mentioned signed as guarantors. Defendants' attorney testified that Mrs. Schafer was a party to the sub-lease "and I felt her signature was necessary." Luce said that he, Schafer, Cornils and Hornstein signed the several papers at the same time; i.e., at a meeting held in the office of defendants' counsel.

Under these circumstances we entertain no doubt that the trial court correctly found and concluded that there was sufficient consideration for the guaranty contract. The fact that it was in writing imported a consideration. (Civ. Code, § 1614; *Security Commercial etc. Bank* v. *Seitz*, 43 Cal.App. 353, 359 [185 P. 188].) "Where a suretyship obligation is entered

into at the same time with the original obligation, or with the acceptance of the latter by the creditor, and forms with that obligation a part of the consideration to him, no other consideration need exist." (Civ. Code, § 2792. See also *Mortgage Guarantee Co.* v. *Chotiner*, 8 Cal.2d 110, 112 [64 P.2d 138, 108 A.L.R. 1080]; *McDonald* v. *Gravenstein etc. Assn.*, 42 Cal.App.2d 329, 332 [108 P.2d 936]; *Pacific States Sav. etc. Co.* v. *Stowell*, 7 Cal.App.2d 280, 281 [46 P.2d 780]; *Hammond Lbr. Co.* v. *Danziger*, 2 Cal.App.2d 197, 201 [37 P.2d 517].) Also, as officers and stockholders of Wholesale, the guarantors derived "a benefit from the transaction of itself a good consideration for the guaranty." (*Mortgage Guarantee Co.* v. *Chotiner, supra*, 8 Cal.2d 110, 112.) Schafer's consent was given and received and his release of Stapland from further obligation, was an act he was under no duty to perform (see *De Hart* v. *Allen*, 26 Cal.2d 829, 832 [161 P.2d 453]), a detriment to him and as such a significant element of consideration. And the option to extend the term for five years was a distinct benefit to Wholesale.

*Helmick* v. *Holaday*, 106 Cal.App. 380 [289 P. 224], invoked by defendants is not in point. It simply holds that the guarantee of a note secured by a mortgage on property sold, was without consideration and void because it was procured by misrepresentations that the holder's consent was necessary to effect subsequent sales of the property.

■ (3) *Defendants claim that plaintiff failed to effect certain improvements required of him by the owners, as expressed in the master lease.*

In his lease from the Tildens plaintiff promised to effect certain improvements in the buildings, such as the installation of a meat processing room and loading dock and alterations that would make possible the maintenance of certain specified temperatures in various parts of the building. In his sublease to Stapland Schafer warranted that all these improvements had already been made. Defendants claim that he had not made them.

The court found against this contention, by finding "untrue" those allegations of the answer (by reference to paragraph numbers of the answer) which stated that Schafer's representations that he had effected these improvements were untrue and false. The fair intendment of such a finding is that those representations were true. Moreover, a finding that Schafer did effect the improvements seems necessarily implied from other findings expressly made.

The evidentiary support for such a finding is ample. Schafer testified that he did make those improvements, that they were fully completed within seven or eight months of the commencement of the terms (1945) of the master lease, and that thereafter during his occupancy and operation (into 1950) the temperatures were in accordance with the requirements of the lease. Defendants' own expert disclaimed any knowledge of the conditions that obtained in this building in 1945 and testified that with the present equipment, if in good shape and properly operated, it is mathematically possible to maintain the required temperatures.

■ (4) *Defendants assign as error the asserted failure of the trial court to declare the rights of the parties in accordance with the prayer of their cross-complaint for declaratory relief.*

The rights which the defendants sought by their cross-complaint to have declared appear to have been substantially the very claims asserted by them in their answer by way of defense to the complaint. When the court finished disposing of their defenses, there was nothing of substance left to declare.

■ (5) *Was it error not to declare the sublease terminated?*

The court found that in April of 1954 the master lessors served plaintiffs with notice to pay the rent or surrender possession [Wholesale had quit paying rent to Schafer in June of 1953], that an employee of defendants delivered the key to the master lessors on April 21, 1954, without the knowledge or consent of plaintiffs, and that thereafter the master lessors occupied and continued to occupy the premises.

Defendants claim that this finding compels the conclusion that the master lease was thereby terminated and that upon such termination the sublease also came to an end.

There is nothing in the finding which compels such a conclusion. The master lease provided that the master lessor, on default by the lessee, might reenter the premises and either terminate the lease or relet the premises as agent for the lessee. The findings indicate that the master lessor exercised his right of reentry, but do not indicate whether the master lessor terminated the lease or not. Accordingly, there was no sufficient basis for declaring the lease forfeited or cancelled. (*Burke* v. *Norton,* 42 Cal.App. 705, 709-710 [184 P. 45] ; approved in *Lawrence Barker, Inc.* v. *Briggs,* 39 Cal.2d 654, 664 [248 P.2d 897].)

*Herman* v. *Campbell,* 86 Cal.App.2d 762, 765-766 [195 P.2d 801], and *City Investment Co.* v. *Pringle,* 69 Cal.App. 416 [231 P. 355], cited by defendants are inapplicable. They

hold that once the master lease is terminated the sublease is terminated, but in the instant case it does not appear that the master lease has been terminated.

Defendants also cite cases which hold that if a case is tried on the theory that a matter is in issue and evidence is received without objection it is too late to attack a finding on such an issue upon appeal. These cases do not hold, however, that if a finding is made upon a collateral matter, it is error if the court does not include in its judgment a declaration of the legal effect of the facts so found, especially where the evidence is insufficient to support the declaration sought upon appeal.

The judgment is affirmed and the motion to take additional evidence is denied.

Peters, P. J., and Bray, J., concurred.