[Civ. No. 22405.   First Dist., Div. Two.   May 25, 1966.]

F. M. SCHAFER et al., Plaintiffs and Appellants, v. WHOLE-SALE FROZEN FOODS, INC., et al., Defendants and Respondents.

452

Myers, Praetzel & Pierce and Charles W. Pierce for Plaintiffs and Appellants.

Fred Leuenberger and William B. Boone for Defendants and Respondents.

AGEE, J.—Plaintiffs-sublessors appeal from a judgment for defendants-sublessees following nonjury trial of this action to recover certain subrents or, as an alternative, to recover damages for failure to pay such subrents.

The trial court found that defendants' obligation to pay rent under the sublease was terminated as of the time when the owners-lessors terminated the principal lease and took over exclusive possession of the leased premises. The pertinent facts follow.

On July 18, 1945 plaintiffs leased a cold-storage building from the owners thereof for a term which, as later extended, expired on December 31, 1955.

On November 20, 1950 plaintiffs subleased the building to Stapland, Inc. for the term December 1, 1950 to December 31, 1955. The sublease contained the following provision: "Sublessor [plaintiffs] agrees to maintain said principal lease in full force and effect and pay all rentals and taxes provided for therein in accordance with its terms."

On March 18, 1952 with plaintiffs' consent, Stapland, Inc. assigned the sublease to defendant Wholesale Frozen Foods, Inc. and the individual defendants guaranteed defendant Wholesale's obligations thereunder.

The principal lease contained the provision that, "if Lessee shall be in default in any rental payment hereunder for a period of ten (10) days from and after written notice of such default given by Lessor to Lessee," the lessor may "re-enter the demised premises, remove all persons therefrom, take possession of the demised premises and either: 1. Terminate this lease, . . . or 2. Without terminating or forfeiting this lease, relet the premises as the agent and for the account of Lessee, . . ."

Plaintiffs failed to pay the rent due on February 1, and March 1, 1954 under the principal lease and on March 18, 1954 the owners sent to plaintiffs a written notice of such default.

On April 14, 1954 the owners served plaintiffs and defendants with a three-day notice to pay rent or deliver up possession (Code Civ. Proc., § 1161, subd. 2), which notice stated that, upon failure to do so, legal proceedings would be instituted against them to declare a forfeiture of the lease and to recover possession and damages. This notice was based upon nonpayment of rent due on March 1 and April 1, 1954. (The owners had applied the prepaid rent for December 1955 as payment of the rent due on February 1, 1954.)

Defendants had no obligation to make any of the rental payments due under the principal lease. The sublease so provided, as follows: "Sublessee agrees to perform all of Sublessor's obligations as Lessee under said principal lease during

the term of this lease, *except* that Sublessee *shall not* be responsible for the payment of rents or any taxes as provided for in said principal lease, . . ." (Italics added.)

On April 22, 1954, no rental payment having been made, the owners took over possession of the premises and remained in exclusive possession thereof during the entire remaining lease period.

Regardless of the rights of plaintiffs and defendants *as between themselves,* it is clear that the owners had the right under the terms of their lease to reenter and take possession of the leaded premises. ▮ It is equally clear that defendants were not required to resist the exercise of such right or to refuse to surrender possession unless forced to do so by eviction proceedings.

With respect to the issue as to whether the lease and sublease were terminated on April 22, 1954, the trial court made the following findings:

"On or about April 22, 1954, the defendants were [constructively] evicted from the possession of said premises, and the owners reentered and resumed possession of said premises, and the owners have remained in possession of said premises for their own account, and not for the account of plaintiffs or defendants, at all times from and after April 22, 1954. Since said date neither the plaintiffs nor the defendants have been in possession of said premises, or any part thereof, at any time since April 22, 1955 [*sic*], nor have they, or any of them, exercised any control over said premises since said date."

"On or about April 22, 1954, upon reentry and resumption of possession by the owners for their own account, the owners terminated, forfeited and cancelled the master lease and the sublease, assignment and guaraty [*sic*] were also terminated, forfeited and cancelled. Thereupon, and through the period from April 22, 1954, to December 31, 1955, the owners occupied the premises for their own account without consulting with plaintiffs or defendants and without any further demands upon or notices to plaintiffs or defendants, and the owners changed the premises and otherwise exercised dominion over said premises in disregard of the master lease and sublease, and the owners offered the premises for sale or lease to others on and for their own account, and the owners and plaintiffs otherwise regarded the lease, sublease and assignment as terminated, forfeited and cancelled."

▮ Plaintiffs contend that these findings are contrary to law in that it was determined in a prior action that the owners

did *not* terminate the principal lease upon reentry and that this issue is therefore res judicata. We do not agree.

This prior action was brought by plaintiffs against defendants to recover subrent payments falling due under the sublease during the period of June 1, 1953 *to* April 1, 1954, inclusive. Judgment for $17,600 was rendered therein in favor of plaintiffs. It was paid in full following affirmance on appeal. (*Schafer* v. *Wholesale Frozen Foods, Inc.*, 151 Cal. App.2d 96 [311 P.2d 184].)

That judgment did not determine defendants' liability for subrent falling due *after* April 1, 1954, nor did it determine whether the principal lease was or was not terminated on April 22, 1954.

The appellate opinion cited above so states, as follows: ''The master lease provided that the master lessor, on default by the lessee, might reenter the premises and either terminate the lease or relet the premises as agent for the lessee. The findings indicate that the master lessor exercised his right of reentry [on April 22, 1954], but do not indicate whether the master lessor terminated the lease or not.'' (151 Cal.App.2d, at p. 101.)

The right of the defendants to raise the issue of termination in this second action was recognized on an appeal taken by plaintiffs following the trial court's sustainment of a general demurrer to their second amended complaint. (*Schafer* v. *Wholesale Frozen Foods, Inc.*, 171 Cal.App.2d 232 [340 P.2d 308].)

While this pleading was held on appeal to be sufficient as against a general demurrer, Presiding Justice (then Justice) Draper, after discussing the effect of the appellate opinion in the first action, pointed out at page 234: ''This is an issue [i.e., whether the lease was terminated] which, *if raised by the answer,* is to be determined by the trial court.'' (Italics added.) Defendants did raise the issue in their answer filed thereafter and thus it was properly before the trial court for determination. While unnecessary to rely thereon, the ''law of the case'' rule supports our conclusion.

The issue as to termination is one of fact. (*Boral* v. *Caldwell*, 223 Cal.App.2d 157, 161-163 [35 Cal.Rptr. 689].)

Here, the owners' three-day notice served on plaintiffs and defendants specifically declared that they would seek ''a forfeiture of said lease'' in the event that the rent was not paid within that period; the owners repossessed the premises on April 22, 1954 and retained control thereof at all times

thereafter without consulting the plaintiffs or defendants; the owners obliterated the subtenant's sign (''Wholesale Frozen Foods'') on the front of the building when they repainted the entire building; they did extensive repair and cleanup work on the interior and put the property up for sale; after the owners repossessed the premises the plaintiffs never visited the premises or attempted to sublease or assign the lease to anyone else.

Although the premises were not relet during the remainder of the lease period, the owners have never attempted to collect any rent for such period from either plaintiffs or defendants, and the trial court correctly found that any cause of action by the owners against said parties is now barred by the statute of limitations.

The foregoing facts give substantial support to the trial court's finding that the lease and sublease were terminated as of April 22, 1954.

■ Termination of the principal lease in the instant situation would as a matter of law carry with it a termination of the sublease, thereby precluding plaintiffs from recovering any subrent or damages based upon the premise that the sublease remained in effect *after* April 22, 1954. (*Scott* v. *Mullins,* 211 Cal.App.2d 51, 54-55 [27 Cal.Rptr. 269]; *Adler* v. *Thomas Distributing Co.,* 148 Cal.App.2d 584, 592 [307 P.2d 14]; *Herman* v. *Campbell,* 86 Cal.App.2d 762, 765-766 [195 P.2d 801].)

As we have seen, plaintiffs were successful in recovering judgment against defendants based upon the failure of defendants to pay the subrents called for under the sublease during the period of June 1, 1953 to April 1, 1954, inclusive. This judgment merged and determined the rights of the parties only as to this period. (See 3 Witkin, Cal. Procedure (1954) Judgment § 59, ''Judgment for Plaintiff as Merger.'')

*Subsequent* thereto, as we have held, the sublease was terminated and the defendants, as sublessees, were relieved of liability for the payment of any further subrents.

Plaintiffs' alternate theory of recovery in damages must therefore fall, since it is based upon the failure of defendants to pay subrent during the period of May 1, 1954 to December 1, 1955, inclusive.

Judgment affirmed.

Shoemaker, P. J., and Taylor, J., concurred.