[No. B087610. Second Dist., Div. Six. Oct. 31, 1995.]

CHUMASH HILL PROPERTIES, INC., etc., Plaintiff, Cross-defendant and Respondent, v.
PERAM, Defendant, Cross-complainant and Appellant.

COUNSEL

Farmer & Ready, Paul F. Ready and Sandra K. Fahey for Defendant, Cross-complainant and Appellant.

William R. Raver for Plaintiff, Cross-defendant and Respondent.

## OPINION

**STONE (S. J.), P. J.**—Peram, a California limited partnership, appeals the trial court's judgment in favor of Chumash Hill Properties, Inc. (Chumash) on Chumash's complaint against Peram, as well as appealing the court's dismissal of Peram's cross-complaint against Chumash. We conclude the trial court properly determined Chumash's subleasehold survived its sublessor's rejection of the primary lease in bankruptcy, preventing the landlord Peram from regaining possession of the subleased property.

Peram owns the subject real property consisting of approximately 26 acres in San Luis Obispo County. Five acres of the property is improved with a bar and restaurant and paved parking. The remaining 21 acres are substantially unimproved.

Peram originally leased the property to Climate One, Inc., which assigned its interest in the lease to Daphne's, Ltd. Daphne's subleased the property to Chumash in 1984 pursuant to a written sublease. Prior to this, Daphne's had executed a note in favor of Carson Wayne Newton secured by a deed of trust against the improvements Daphne's had made on Peram's property. In 1987, Newton obtained a judgment of foreclosure on the deed of trust which

allowed him to take over Daphne's lease payments to Peram. The 1987 judgment modified Chumash's sublease, including limiting Chumash's possession to the 21-acre unimproved portion of the land. The parties did not appeal this judgment.

In 1992, Newton filed for a voluntary chapter 11 bankruptcy. The bankruptcy court ordered Newton's lease with Peram would be deemed rejected pursuant to 11 United States Code section 365(d)(4)[1] if Newton did not move to assume the lease. No such motion having been filed by Newton within the court's time limitation, his lease was deemed rejected under federal law.

Chumash was not notified of Newton's rejection of Peram's lease or of the bankruptcy proceedings until several months after the lease was deemed rejected by the bankruptcy court. Subsequently, Peram served Chumash with a 30-day notice to quit, which asserted Peram's right to possession of the premises pursuant to Newton's bankruptcy. Peram did not allege any default by Chumash in its obligations as a subtenant.

Chumash's suit for declaratory and injunctive relief followed. Peram filed a cross-complaint for unlawful detainer; again, Peram did not allege any wrongdoing by Chumash under its sublease.

The parties stipulated to a majority of the facts, and after legal arguments by counsel the trial court determined that Chumash was entitled to remain in possession of the 21-acre unimproved portion of Peram's property. The court's "Statement of Decision and Judgment" is summarized below.

The original lease between Peram and Climate One, Inc. bargained for and set forth the rights and duties of sublessees. The lease specifies that in the event of a bankruptcy by the lessee, defined as a "noncurable" default, the sublessee's possession and use shall not be disturbed so long as the sublessee complies with the sublease provisions. As a sublessee, Chumash is a third party beneficiary under the lease and is entitled to the protection of this nondisturbance provision left intact by the 1987 judgment. Chumash's sublease, therefore, was not terminated by Newton's bankruptcy; it unilaterally exists in light of the terms of the lease and the intent of the original parties to the lease.

---

[1] That provision states: "Notwithstanding paragraphs (1) and (2), in a case under any chapter of this title, if the trustee does not assume or reject an unexpired lease of nonresidential real property under which the debtor is the lessee within 60 days after the date of the order for relief, or within such additional time as the court, for cause, within such 60-day period, fixes, then such lease is deemed rejected, and the trustee shall immediately surrender such nonresidential real property to the lessor."

The trial court continued that, although the lease gave the sublessee the option to cure a "curable" default, Peram admitted it never provided Chumash with the opportunity to cure Newton's monetary default—the result of his noncurable default of rejecting the lease, nor was any such default the basis for Peram's cross-complaint. Hence, Chumash was obligated only to perform the terms of the sublease and was not required to fulfill the obligations of a lessee by curing Newton's monetary default or operating the bar and restaurant on the five-acre parcel. Peram was estopped to object to the de facto partitioning of its 26 acres by the 1987 judgment due to its acquiescence in the judgment and its acceptance since then of rents from the sublessee Chumash.

The issue of whether Chumash is entitled to continued possession and use of Peram's property depends on the disputed interpretation of the lease executed by Peram and its original lessee, Climate One. The terms of the sublease executed by Climate One's assignee Daphne's and Chumash, and the modifications to the sublease pursuant to the 1987 judgment, are not in dispute.

■ We independently review the trial court's interpretation of the subject lease's terms. (*Valsan Partners Limited Partnership* v. *Calcor Space Facility, Inc.* (1994) 25 Cal.App.4th 809, 817 [30 Cal.Rptr.2d 785].)

Contained in "Article XV — Assignment and Subletting" of the lease is section 15.02, providing in part: "*Subletting.* Lessee shall have the absolute right to sublet all or any part or parts of the premises or improvements or both, and to assign, encumber, extend or renew any sublease, upon the following conditions: [¶] (1) Attornment by Sublessee. Each sublease shall contain a provision, satisfactory to Lessor and to each leasehold mortgagee having an interest at the time the sublease is executed, requiring sublessee to attorn to Lessor . . . if Lessee defaults under this lease and if the sublessee is notified of Lessee's default and instructed to make sublessee's rental payments to Lessor or to the leasehold mortgagee or to such designated person."

Section 16.01 in "Article XVI — Default and Remedies" states in pertinent part: "*Default.* Each of the following events shall be a default by Lessee and a breach of this lease: [¶] (1) Nonpayment; Failure to Perform. Failure or refusal to pay when due any installment of rent or any other sum required by this lease to be paid by Lessee, or to perform as required [by] any other covenant or condition of this lease. . . . [¶] . . . [¶] (3) Bankruptcy. An assignment by Lessee for the benefit of creditors or the filing of a voluntary or involuntary petition by or against Lessee under any law for the purpose of adjudicating Lessee a bankrupt . . . ."

Section 16.02 in the same article states in relevant part: "*Rights to Cure.* [¶] (1) Notice of Default. As a precondition to pursuing any remedy for an alleged default by Lessee, Lessor shall, before pursuing any remedy, give notice of default to Lessee and to all qualifying sublessees and mortgagees stating that the notice was for the purpose of notice under this section 16.01(1). A qualifying sublessee is a sublessee in possession under an existing sublease which is authorized under this lease. . . . Each notice of default shall specify in detail the alleged event of default and the intended remedy. . . . [¶] . . . [¶] (4) Sublessee's Right to Cure. Any sublessee of the premises or portion thereof and any sublessee of such a sublessee, shall have the right, at its election, to cure a curable default under this lease, or under any mortgage then existing under provisions of this lease. If any such sublessee cures all defaults then existing, or if any such sublessee cures all defaults that are then curable and other defaults are noncurable, or if all then existing defaults are noncurable, that sublessee's possession and use shall not be disturbed by Lessor or by mortgagee as long as: [¶] (a) The sublessee performs his sublease's provisions; [¶] (b) The sublessee attorns to Lessor and mortgagee according to their respective interests; and [¶] (c) Subsequent defaults are cured as in the above provisions or are noncurable."

Section 16.03 in the same article provides in relevant part: "*Remedies.* If any default by Lessee shall continue uncured, following notice of default as required by section 16.02(1), . . . Lessor has the following remedies in addition to all other rights and remedies provided by law or equity, to which Lessor may resort cumulatively or in the alternative: [¶] (1) Termination. Lessor may, at Lessor's election, terminate this lease by giving Lessee notice of termination. On the giving of the notice, all of Lessee's rights in the premises and in all improvements shall terminate. Promptly after notice of termination, Lessee shall surrender and vacate the premises and all improvements . . . and Lessor may reenter and take possession of the premises and all remaining improvements and eject all parties in possession or eject some and not others or eject none; provided, however, that no sublessee qualifying under the nondisturbance provisions of this lease shall be ejected. . . . [¶] (2) Reentry. Lessor may, at Lessor's election, reenter the premises, and, without terminating this lease, at any time and from time to time relet the premises and improvements or any part or parts of them for the account and in the name of Lessee or otherwise. Lessor may, at Lessor's election, eject all persons or eject some and not others or eject none; provided, however, that no sublessee qualifying under the nondisturbance provisions of this lease shall be ejected."

Taking all of the foregoing provisions into consideration, the lease expressly and unambiguously protects the right of a nonbreaching sublessee

to retain possession and use of the subleasehold upon a termination of the leasehold. Here, since Peram made no allegations that Chumash was not fulfilling its obligations as a sublessee, under the lease Peram was not entitled to evict or eject Chumash from the subleased premises, either because of Newton's surrender of his lease in bankruptcy or his nonpayment of rent.

Peram attempts to overcome the plain language of the lease by arguing that one of the effects of Newton's rejection of the lease in bankruptcy was to inhibit any court from thereafter "reviving" the lease. However, "revival" of the lease was not a factual or legal issue in the trial court. As the trial court determined, the sublease provisions of the lease had a life of their own according to the intent of the original parties to the lease.

Peram also cites various federal case authorities for its theory that Chumash's sublease terminated upon Newton's rejection of the lease. None of these authorities advances its legal proposition.[2]

Peram further argues the trial court ignored the intent of the lease to use part of Peram's property for a bar and restaurant. This issue is immaterial. Pursuant to the unchallenged 1987 judgment, Chumash's subleasehold was held not to include the bar and restaurant portion of the property. This action was consistent with the terms of the lease providing that all or any part of the subject property may be subleased. Although the lease also indicates that as a sublessee Chumash has the option to cure any default by a lessee, at no time herein did Peram demand that Chumash cure any default; Peram did not even timely notify Chumash of Newton's default. As the trial court determined, Chumash had no obligation under the lease to take over the operation of the bar and restaurant.

In sum, the trial court properly enforced Chumash's rights as a sublessee according to the express, plain language of the lease. Peram maintains this decision is inequitable. However, as Chumash states, Peram and Climate One bargained for the right of sublessees to remain in possession of the subleased land in the event of default or breach of the lease by the lessee. This right potentially benefits the lessor, the lessee in default, and the

---

[2]*In re Elm Inn, Inc.* (9th Cir. 1991) 942 F.2d 630 (the relevant time period for rejection of an unexpired lease pursuant to 11 U.S.C. § 365(d)(4) begins when the debtor files for bankruptcy, and at the end of that period when the debtor's possessory interest in the lease terminates the lessor simultaneously is given the right to immediate surrender of the leased property, citing *Sea Harvest Corp.* v. *Riviera Land Co.* (9th Cir. 1989) 868 F.2d 1077, 1080-1081); *In re Arizona Appetito's Stores, Inc.* (9th Cir. 1990) 893 F.2d 216 (the filing of a motion to reject the lease within the time limitation period of 11 U.S.C. § 365(d)(4) does not prevent the lease from being "deemed rejected" under that statute).

sublessee. No inequity can result from lawful contract provisions which benefit all parties to the contract.

Moreover, nothing about the lease provisions here relating to sublessees, including the nondisturbance clauses, has been shown to be violative of law or policy. (1 Witkin, Summary of Cal. Law (9th ed. 1987) Contracts, §§ 430, p. 386, 461-462, pp. 411-412, citing Civ. Code, §§ 1550, 1641, 1667.)

To the contrary, legal authority supports the trial court's enforcement of the sublease provisions. ██ Nondisturbance agreements between a lessor and a sublessee typically provide that "notwithstanding a default under or termination of the prime lease, the sublease will remain undisturbed as a lease between the prime lessor and sublessee if the sublessee is paying and performing its obligations under the sublease. One of the protections afforded to a sublessee by a nondisturbance agreement is that if the sublessor becomes a debtor under the Bankruptcy Code, and rejects the prime lease, the sublease will not fall inasmuch as it will be taken up by the prime lessor. . . . [¶] . . . [¶] . . . [A nondisturbance] agreement ordinarily will require performance of obligations by both parties. The prime lessor will be required to recognize the sublease and to accept the sublessee as the tenant of the prime lessor, and the sublessee will be required to attorn to the prime lessor. Thus a nondisturbance agreement may be breached by the prime lessor by refusing to accept the sublease and the sublessee." (Cherkis & King, Collier Real Estate Transactions and the Bankruptcy Code (1984) § 4.03, pp. 4-19 to 4-22.)

██ California law has long held that a tenant's surrender of his estate to the landlord does not destroy the estate of the underlessee if the tenant has made an underlease. (*Buttner* v. *Kasser* (1912) 19 Cal.App. 755, 760 [127 P. 811].)

The *Buttner* rule has been held inapplicable as a matter of law where the termination of the lease terminated the sublease. (*Northridge Hospital Foundation* v. *Pic 'N' Save No. 9, Inc.* (1986) 187 Cal.App.3d 1088, 1095 [232 Cal.Rptr. 329]; *Fifth & Broadway Partnership* v. *Kimny, Inc.* (1980) 102 Cal.App.3d 195, 201, 203 [162 Cal.Rptr. 271]; *Schafer* v. *Wholesale Frozen Foods, Inc.* (1966) 242 Cal.App.2d 451, 456 [51 Cal.Rptr. 459].) This authority does not pertain to nondisturbance clauses in favor of sublessees.

The judgment is affirmed.

Costs on appeal are awarded to Chumash.

Gilbert, J., and Yegan, J., concurred.